498 So.2d 368 (1986)
Robert Lee WHITE, Jr.
v.
STATE of Mississippi.
No. 56665.
Supreme Court of Mississippi.
November 19, 1986.
Jay L. Jernigan, Hattiesburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by DeWitt Allred, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ANDERSON and GRIFFIN, JJ.
ANDERSON, Justice, for the Court:
Robert Lee White, Jr. was indicted by the Grand Jury of Forrest County on the charge of rape and as an habitual offender. A series of rapes had been committed in the Hattiesburg area and due to publicity surrounding the appellant, venue was changed to Lauderdale County where trial was had in September 1984. The jury returned a verdict of guilty and fixed sentence at life imprisonment.
The trial court adjudged the appellant to be an habitual offender and sentenced him to life imprisonment without the possibility of parole. It is from both the conviction and sentence that he appeals.
Finding no error in the trial court, we affirm both the conviction and sentence.

I.
The prosecutrix, a thirty-four-year-old female, resided on the ground floor of a *369 four-plex apartment on the west side of Hattiesburg.
She was home alone when sometime after 12:30 a.m. on the morning of April 17, 1981, she was awakened by a man who forcibly raped and had oral sex with her.
The attacker also demanded money but she had none. He then asked for her car keys so that he could take her car and sell it. He went into the bathroom to search her purse for the car keys. Apparently he did not find them and left a short time later.
The prosecutrix testified that she never actually saw her attacker  partially because he covered her face with pillows and also because she tried not to look at him because he might kill her. However, she determined from his voice and manner of speech that he was a black male in his 20's to early 30's.
After her attacker left, she noticed the dining room window was open, the screen was off, and a macrame planter had been removed from the window. Two pieces of a blue, ragged cloth or towel were found in the bedroom and another piece was found just outside her bedroom window on the ground.
The prosecutrix called her apartment manager for help. He summoned police and she was thereafter carried to the hospital for treatment. It was later discovered that she had sustained a broken rib. It was stipulated that medical examination determined that she had had sexual intercourse. It was also stipulated that the blood and semen tests could neither include or exclude the defendant, who was blood type B, nonsecretor. Nonsecretor status means his blood type could only be determined by analyzing his blood  all other body fluids, such as semen, would not secrete his blood type.
An expert witness for the state testified that the three pieces of blue cloth matched. Hair fragments on the piece of cloth found outside exhibited the same microscopic characteristics as the known pubic hairs of appellant and a fragment of hair taken from the bed linen was found to be of Negroid origin.
Latent fingerprints lifted from the screens, sills and inside and outside of the prosecutrix' bedroom window, the children's bedroom window and the dining room window, all matched the prints of the appellant, as well as prints taken from the clay pot that had been in the macrame hanger in front of the dining room window.
The appellant did not testify at trial nor did he assert his alibi defense. His defense consisted mainly of a rebuttal or argument based on fairly insignificant discrepancies in the victim's testimony.
The appellant has not contested the sufficiency of the evidence on this appeal, but has assigned a number of other errors. We find that only three of these merit the attention of the Court, and we address only those.

II.

DID THE LOWER COURT ERR IN OVERRULING THE REQUEST BY THE DEFENDANT FOR THE STATE TO PROVIDE ALL LAW ENFORCEMENT RECORDS WITH REGARD TO THE WEST SIDE RAPIST IN WHICH ROBERT LEE WHITE, JR. WAS DEFINITELY A SUSPECT.
Appellant filed a request for discovery and request for production. The request for production sought (1) all records of any law enforcement group that was formed to investigate the alleged rapes out in the west area of Hattiesburg and specifically the alleged rapes of the "West Side Rapist." (2) The personnel file of Hattiesburg Police Detective Stuart Stephenson, including all records of complaints, reprimands or disciplinary action taken against him by the Hattiesburg Police Department or any agency.
Counsel for appellant stated:
There was a law enforcement group formed approximately 10 to 12 to 13 officers, detectives from this area and other *370 areas in the State and I'd ask that I receive a copy of any and all reports that they may have made or evidence they gathered.
After a brief discussion of defense counsel's entitlement to these materials the court inquired of the prosecutor as to whether he knew of the existence of such records. The prosecutor responded:
The only records I'm aware of, Your Honor,  and I think, perhaps defense counsel may already have 'em  but there are a number of innocent individuals whose prints were compared with the latent lifts that we obtained from the scene over a two year period. Who were absolutely innocent, never been charged with any crime and their fingerprints were submitted but I think they've been furnished.
Any other material I'm not aware of... . As far as all records, I don't know of any case that we are required to produce all records of any law enforcement agency. We'd produce all records pertinent to this particular case and will continue to do so.
This Court would point out at this juncture that if there was in fact some investigative police group having possession of discoverable materials, the appellant would be entitled to it upon request. We stated in Fuselier v. State, 468 So.2d 45 (Miss. 1985):
Further, where discoverable material is in the possession of the state crime laboratory, an agency charged with law enforcement or any other state agency or office, the prosecution's obligation to produce it according to the rules of discovery remains unchanged. The state is not free to hide discoverable material behind a curtain of agency. For purposes of discovery all of these agencies are "the state." See United States v. Deutsch, 475 F.2d 55 (5th Cir.1973); Box v. State, 437 So.2d 19 (Miss. 1983), concurring opinion of Justice Robertson, f.n. 4.
468 So.2d at 56.
The lower court noted that the defense was entitled to that which concerned this case and denied the request for production.
However, during the omnibus hearing, the state tendered additional discovery, including documents, statements, witnesses, and physical evidence. It also tendered fingerprint analysis of other parties not involved in this litigation, but that had been taken by the investigating agencies.
The defense counsel and prosecutor made the following statements:
BY DEFENSE COUNSEL: The defense will state at this time it has obtained all documents in the file of the District Attorney's office and I have fully inspected the prosecution file.
BY PROSECUTOR: If it please the Court, the State would assert that it has disclosed all evidence in our possession favorable to the defendant on issue of guilt. In fact we made a complete copy of the entire file pertaining to it.
At the end of this transaction the prosecutor inquired of defense counsel as to whether he desired further discovery. The response was, "no, I think discovery has been completed."
This Court held recently in Hentz v. State, 489 So.2d 1386, (Miss. 1986), that in criminal cases the prosecution should make available to defense attorneys all such materials in their files and allow defense attorneys to determine whether the material is useful in the defense of the case, (at 1388). All of the evidence in the record supports the contention that the prosecutor in the case at bar did indeed comply fully with this recommendation. We commend the prosecutor for his compliance and cooperation in making his files available to the defense.
There is nothing in the record other than unsupported suggestions by appellant to show the existence of any records or files pertinent to the case at bar not produced by the prosecution. Appellant has failed to *371 show any discovery violation sufficient to warrant reversal of this case.
Appellant argues secondly that he is entitled to the personnel files of Detective Stephenson in order to "sift through in hopes of finding something damaging with which to impeach him as a witness."
Rule 4.06 of Mississippi Uniform Rules of Circuit Court provide:
The prosecution shall disclose to each defendant or to his attorney and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer;
(3) Copy of the criminal record of the defendant, if proposed to be used to impeach;
(4) Copy of crime lab reports or report or any tests made;
(5) Exhibit any physical evidence and photos to be offered in evidence; and
(6) Copy of any exculpatory material concerning defendant.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require.
The personnel file of a potential witness is not among the required disclosure in Rule 4.06, nor does appellant cite any authority in support of this contention. The fact that the officer's personnel records were in the possession of the police department (by virtue of his employment) in no way alters the employer/employee status or relationship. To require an employee to surrender the personnel files of an employee to be "sifted through" in such a fashion for no good cause would be an unwarranted invasion of privacy which this Court, under the circumstances, will not condone.

III.

DID THE LOWER COURT ERR IN ALLOWING THE STATE OF MISSISSIPPI THROUGH ITS OPENING ARGUMENTS TO TALK ABOUT OTHER ACTS, ORAL SEX IN ADDITION TO THE RAPE.
During opening argument the state alleged that the appellant/defendant made the following allegation: "She was wearing a nightshirt, pulled the panties up, had oral sex with her  ." At this point, the defense counsel moved for mistrial.
The trial court properly overruled the motion for mistrial under the auspices of Oates v. State, 437 So.2d 441 (Miss. 1983). This was also a rape case wherein testimony involving oral sex was admitted. This Court stated:
Appellant contends that the trial court erroneously permitted the prosecutrix to relate that immediately after she was taken from the car to the side of the road by appellant, he forced her into an act of oral sex before actually raping her. It is contended that this was also evidence of another crime and inadmissible. Again, it is clear that this testimony was admissible as being part of the res gestae surrounding the entire occurrence and cannot be separated from all that was happening from the beginning to the end of the actions taken against the prosecutrix during the course of the events.
437 So.2d at 442.
Likewise in the case sub judice, testimony regarding oral sex was part of the res gestae. The foregoing authority disposes of appellant's argument without further need of discussion.

IV.

DID THE LOWER COURT ERR IN NOT ALLOWING THE DEFENSE TO GO INTO THE BACKGROUND OF THE PROSECUTRIX IN THAT THE STATE HAD ALREADY ASKED HER ON DIRECT EXAMINATION IF SHE *372 HAD HAD ANY BLACK INDIVIDUALS IN HER BEDROOM.
Prior to trial the court sustained inter alia a motion in limine to prohibit defense counsel from referring to opinion, character, or reputation evidence of the victim.
Part of the state's evidence included pubic hairs of Negroid origin found in the victim's bed and on the towel found outside her apartment. The state asked, "for clarity in the record, ... at any point in time did you ever have a black individual in your bedroom?" The appellant interpreted the prosecutor's questioning regarding black individuals as being directly related to the victim's sexual conduct. Based on that interpretation the appellant asked the victim if she was dating anyone at the time of the rape. An objection was made and sustained.
The jury was excused and the state moved the trial court to impose sanctions for violation of the order in limine. In response to the trial judge's question, defense counsel stated that he asked the question in an effort to establish the victim's marital status. Counsel made apology to the trial court, and the judge overruled the motion for the imposition of sanctions.
Appellant's sole contention is that the prosecution opened up the line of questioning by asking if she had ever had a black individual in her bedroom.
Appellant argues his right to cross examine on the issue under MCA § 97-3-70 (1977) which permits such question where the prosecution introduces testimony or evidence relating to the complaining witness' sexual conduct.
It is clear that the questioning in this case related to identity of evidence and not sexual conduct. This assignment is groundless.
The Court finds no error in the conviction or sentence of appellant.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and GRIFFIN, JJ., concur.