On Application for Rehearing
The opinion of August 6, 1999, is withdrawn and the following is substituted therefor.
Michael Jeffrey Land petitions this Court for a writ of mandamus directing Judge James H. Hard IV, of the Jefferson Circuit Court, to grant a portion of his motion for discovery filed in regard to his petition for postconviction relief. We grant the petition in part and deny it in part, and issue the writ.
Land first petitioned the Court of Criminal Appeals for this relief; that court, on July 2, 1998, denied his petition, with an opinion. See Ex parte Land, 775 So.2d 840 (Ala.Crim.App. 1998). Land then filed an application for rehearing with the Court of Criminal Appeals, but later withdrew *Page 849 
that application and filed a petition in this Court. His petition is before this Court pursuant to Rule 21(e), Ala.R.App.P., which provides that a decision by a court of appeals on an original petition for the writ of mandamus may be reviewed de novo by this Court, and that an application for rehearing below is not a prerequisite for such review.[1]
In December 1993, Land was convicted of two counts of capital murder for the murder of Candace Brown, on the basis that that murder was committed during a burglary and during a kidnapping. See Ala. Code 1975, §§ 13A-5-40(a)(1) and (a)(4). The circuit court sentenced Land to death by electrocution. His conviction and sentence were affirmed on appeal. See Land v. State,678 So.2d 201 (Ala.Crim.App. 1995), aff'd, 678 So.2d 224 (Ala.), cert.denied, 519 U.S. 933 (1996).
In October 1997, Land petitioned the Circuit Court of Jefferson County (the trial court in which he had been convicted) for postconviction relief, pursuant to Rule 32, Ala.R.Crim.P., requesting that his conviction and sentence be set aside. Land based his Rule 32 petition on several claims, only a few of which are relevant to this petition for the writ of mandamus. The State filed motions asking the circuit court to dismiss many of the claims in Land's petition. On April 20, 1998, the circuit court dismissed most of Land's claims because they either had been raised on the direct appeal or could have been raised on the direct appeal, and it dismissed the other claims for failure to meet the specificity requirement of Rule 32.6(b), Ala.R.Crim.P. However, the circuit court did allow Land to amend his petition as it related to the claims lacking specificity. In his petition, Land contends that his principal Rule 32 claim is that his trial counsel was ineffective at the guilt and penalty stages of his trial. For the most part, the various subparts of Land's Rule 32 claim of ineffective assistance of counsel remain pending before the circuit court, and the majority of the discovery he seeks relates to his ineffective-assistance claim. Land also seeks discovery relative to claims pursuant to Miranda v. Arizona,384 U.S. 436 (1966), and Brady v. Maryland, 373 U.S. 83 (1963); the State contends those claims have been dismissed.
Soon after filing his Rule 32 petition, Land filed two discovery motions in the circuit court. In his first motion, Land sought access to the complete files of the Jefferson County district attorney's office related to the case, and the complete files of all other agencies involved in the investigation of the charges against him, including the Jefferson County Sheriff's Department, the Birmingham Police Department, the Jefferson County coroner's office, the Alabama Bureau of Investigation, the Alabama Department of Forensic Sciences, and the Alabama Department of Youth Services. In his second discovery motion, Land sought access to his institutional records, as generated by several state agencies. The State wrote a letter to the trial court stating its opposition to Land's motions, and it orally opposed the motions at a status conference.
The trial court entered an "Order Regarding Discovery of Prosecution Files," which stated:
 "This cause having come before the Court on the petitioner's motion for discovery of the prosecution files relating to Michael Jeffrey Land in the possession of the Jefferson County District Attorney's Office, and the same having *Page 850 
been duly considered by this Court, it is hereby ORDERED:
 "The Jefferson County District Attorney's Office shall make available to petitioner for inspection and copying, at his expense, any and all records which are discoverable pursuant to Rule 16.1 of the Alabama Rules of Criminal Procedure relating to the May 1992 death of Candace Brown, the investigation of Ms. Brown's death, and the arrest and prosecution of Michael Land as a result of Ms. Brown's death. With regard to any documents for which the State claims a privilege, those documents shall be produced to the Court for an in camera inspection."
Although in its order the trial court did not mention Land's other discovery requests, it did, in a letter to the parties, state that the rest of what Land "is seeking by way of discovery is irrelevant to the issues framed by the Petition for Relief." Land moved for a "reconsideration," but the trial court denied the motion.
In his mandamus petition, Land alleges that the trial court erred in denying him access to his penal-institution records, his mental-health records, and his juvenile records, and in denying him access to records of the Birmingham Police Department's investigation regarding other suspects in Candace Brown's murder. Land argues that these materials support his claims alleging ineffective assistance of counsel and his claim alleging that the State committed a Brady violation.
We begin with the rule that "mandamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Horton,711 So.2d 979 (Ala. 1998) (citations omitted). This Court has held that a petition for the writ of mandamus is the proper means for seeking appellate review of a trial court's discovery order. Exparte Monk, 557 So.2d 832 (Ala. 1989). As noted above, Land has complied with Rule 21, Ala.R.App.P., and the State has refused to produce the materials he sought. Therefore, the only issues to be resolved are (1) whether the State has an imperative duty to give Land access to the materials requested and (2) whether Land has shown a clear legal right to the discovery order he seeks. In determining whether Land has shown a clear legal right, we limit our review to determining whether the trial court abused its discretion in denying Land's discovery motion. Horton, 711 So.2d at 983.
Land maintains that the State has an imperative duty to give him access to the materials and that he has shown a clear legal right to the relief requested because, he says, he presented the trial court with claims of ineffective assistance of counsel that were meritorious on the face of the petition. He says he alleged facts that, if proven, would entitle him to relief. Land points us to Strickland v. Washington, 466 U.S. 668 (1984), in which the United States Supreme Court held that to establish a claim of ineffective assistance of counsel, a petitioner must prove (1) that counsel did not provide reasonably effective assistance and (2) that counsel's deficient performance prejudiced the petitioner. Land also points us to the standard for showing prejudice as stated in Strickland, in which the Supreme Court held: "[To show prejudice, the] defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.
Land argues that it would be difficult, if not impossible, for him to satisfy the prejudice prong of Strickland without the requested discovery. He maintains that in order to show the trial court a reasonable probability that the outcome would have *Page 851 
been different, he must obtain actual proof in the form of records to show that evidence was available to his trial counsel at the time of the trial and that there was a reasonable probability that that evidence would have affected the outcome. Land says:
 "[Without the materials, the trial court's] review is no review at all, and will require that Federal Courts compel discovery of now sought-after evidence and will heighten federal involvement in Alabama capital cases. See Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992) (postconviction petitioner is entitled to federal evidentiary hearing on merits of claim when applicant was deprived of full and fair opportunity to present evidence in state courts); 28 U.S.C. § 2254; Rule 6(a), Habeas Rules [Governing § 2254 Cases in the United States District Courts], Advisory Committee Notes (`Where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.')."
(Petition for Mandamus, p. 6.)
As for the documents relating to his claim that the State committed a Brady violation, Land maintains that the trial court abused its discretion in restricting discovery to the prosecutor's files because, he says, he provided the trial court with specific facts and allegations showing that the police department has information regarding its investigation of other suspects in the murder of Candace Brown.
The State contends that Land has not shown that the State has a duty to give him access to the materials he seeks or that he has a clear legal right to the order sought. The State says that nothing in the Alabama Rules of Criminal Procedure provides a vehicle for postconviction discovery of documents and/or other things.[2] The State concedes that a trial court has an inherent right to compel discovery. However, it maintains that this right to compel discovery should be limited to those circumstances in which the defendant presents the trial court with "good cause" to order the State to disclose the requested items. The State says Land did not present the trial court with good cause and that he is merely on a "fishing expedition" to find information to support his petition, which, the State says, should be meritorious on its face.
We note that in making its arguments, the State relies on the July 2, 1998, opinion of the Court of Criminal Appeals, in which that court denied a petition similar to the one now before us. In that opinion, the Court of Criminal Appeals correctly recognized that the Alabama Rules of Criminal Procedure do not specifically provide for postconviction discovery of documents and/or other things. See Land, supra, 775 So.2d at 843 . The Court of Criminal Appeals also correctly noted that "there is little Alabama law on this issue." Id. at 845. That court then, 775 So.2d at 845, quoted with approval State v. Marshall, 148 N.J. 89,690 A.2d 1, cert. denied, 522 U.S. 850 (1997), in which the New Jersey Supreme Court, when faced with a question of discovery in a postconviction-relief proceeding commenced by a defendant who had been convicted of capital murder, held that "where a defendant presents the [postconviction-relief] court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged, the court *Page 852 
has the discretionary authority to grant relief."148 N.J. at 270, 690 A.2d at 92.
In rejecting Land's petition for a writ of mandamus, the Court of Criminal Appeals held that Land had "established no `clear legal right' to the discovery [sought]," 775 So.2d at 847. Although that court did not specifically say that Land did not show good cause for the discovery sought, it held that "Judge Hard's discovery order gives Land more than he is lawfully entitled to obtain in a post-conviction proceeding." Id. at 846. The Court of Criminal Appeals also distinguished this Court's decision in Ex parte Monk, supra, 557 So.2d at 836-37, in which this Court stated that "broader discovery" is justified in capital cases, by stating that the present case involves a petition for postconviction relief and not a motion for pretrial discovery. See the July 2, 1998, opinion, 775 So.2d at 843.
We agree with the Court of Criminal Appeals that "good cause" is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar "good-cause" or "good-reason" standard for the postconviction discovery process. See Marshall, supra; State v. Lewis,656 So.2d 1248 (Fla. 1994); People ex rel. Daley v. Fitzgerald,123 Ill.2d 175, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra,123 Ill. 2d at 183, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that "an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief." Ex parte Boatwright,471 So.2d 1257, 1258 (Ala. 1985).[3]
We emphasize that this holding — that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to "fish" through official files and that it "is not a device for investigating possible claims, but a means of vindicating actual claims." People v. Gonzalez,51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776
(1990), cert. denied, 502 U.S. 835 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright,805 F.2d 930, 933 (11th Cir. 1986) ("a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief"),cert. denied, 482 U.S. 918, 919 (1967). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala.R.Crim.P., which states:
 "The petition must contain a clear and specific statement of the grounds upon *Page 853 
which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
That having been said, we must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause.
 I. The Ineffective-Assistance-of-Counsel Claims A. The Penalty Phase of Land's Trial
We begin with Land's claims that relate to his counsel's performance during the penalty (or sentencing) phase of his trial because most of his discovery requests arise from these claims. Land alleges that his trial counsel was ineffective at the penalty phase of his trial because, he says, his counsel did not investigate the possibility of the existence of mitigating evidence and did not present any evidence of mitigating circumstances. Land says that evidence of mitigating circumstances existed at the time of his trial and that that evidence consists of the following: (1) evidence that he adjusts well to incarceration; this evidence, he says, is contained in records of his incarceration in the Jefferson County jail, the State Cattle Ranch Facility, the Mobile County jail, the Mt. Meigs Youth Services Facility, and records held by the Alabama Board of Pardons and Paroles and the Alabama Department of Corrections; (2) evidence of mental-health problems; this evidence, he says, is contained in records maintained by Bryce Hospital, Taylor Hardin Secure Medical Facility, the Alabama Department of Mental Health and Mental Retardation, the Alabama Department of Youth Services, Mt. Meigs Youth Services Facility, and the Department of Human Resources; (3) evidence of mental and emotional problems stemming from family problems and relationships he experienced as a juvenile; this evidence, he says, is held by the Alabama Department of Youth Services and the Mt. Meigs Youth Services Facility. Land maintains that all of this evidence was available at the time of his trial and that his trial counsel should have attempted to discover it and present it at the penalty phase of his trial.
The State contends that Land is merely attempting to use the discovery process as a "fishing expedition" and to "drum up" a claim of ineffective assistance of counsel because, the State says, none of his claims is meritorious on its face. The State also argues that Land has not shown that the documents he requests relate to his claims of ineffective assistance of counsel or that the documents he seeks contain any mitigating evidence. The State also maintains that Land has waived his right to request discovery of his correctional and juvenile records because he did not make such a request before the trial court. Last, the State contends that Land is not entitled to the requested information because, it says, he has not presented evidence indicating that he has ever had any interaction with Bryce Hospital, Taylor Hardin Secure Medical Facility, or the Alabama Department of Human Resources.
First, we disagree with the State's argument that Land's claims are not facially meritorious. In fact, Land's claims, if proved to be true, would entitle him to relief. The United States Court of Appeals for the Eleventh Circuit has held that trial counsel's failure to investigate the possibility of mitigating evidence is, per se, deficient performance. See Horton v. Zant,941 F.2d 1449, 1462 (11th Cir. 1991) ("our case law rejects the notion that a `strategic' decision can be reasonable when the attorney has failed to investigate his options and make a reasonable choice between them"), cert. denied, 503 U.S. 952 *Page 854 
(1992); see, also, Jackson v. Herring, 42 F.3d 1350, 1366-68 (11th Cir.) ("Although counsel need not `investigate every evidentiary lead,' he must gather enough knowledge of the potential mitigation evidence to arrive at an `informed judgment' in making [the decision not to present such evidence]. . . . [A] legal decision to forgo a mitigation presentation cannot be reasonable if it is unsupported by sufficient investigation.") (emphasis added; citations omitted), cert. dismissed, 515 U.S. 1189 (1995). Furthermore, trial counsel may be found ineffective for failing to present evidence of adjustment to incarceration, evidence of mental-health problems, and evidence regarding the defendant's contact with a juvenile system. See Skipper v. South Carolina,476 U.S. 1 (1986) (holding that a capital defendant must be permitted at the penalty phase of his trial to introduce evidence of adjustment and good behavior while incarcerated); Horton v.Zant, supra (counsel found ineffective for not presenting evidence of adjustment to incarceration); Blanco v. Singletary,943 F.2d 1477 (11th Cir. 1991), cert. denied, 504 U.S. 943 (1992) (counsel found ineffective for failing to introduce evidence that defendant had mental-health problems and a very low IQ and had suffered from various bouts of paranoia and depression); Porter v. Wainwright, supra (holding that juvenile records may be evidence of mitigating circumstances and that trial counsel's failure to present such records may constitute ineffective assistance of counsel); see, also, Williams v. Turpin, 87 F.3d 1204 (11th Cir. 1996) (failure to investigate and present juvenile records may constitute ineffective assistance of counsel, depending on the content of such records and a showing of prejudice).
Second, the State's argument that Land has not shown that the requested documents contain evidence of mitigating circumstances and that he therefore is not entitled to the requested discovery is equally unavailing. Until the documents are actually produced, it is impossible to determine whether they contain evidence of mitigating circumstances. Cf. United States v. Streit,962 F.2d 894, 900 (9th Cir.) (rejecting the Government's position that the defendant could not discover sealed documents because he could not show that the documents contained exculpatory evidence and stating that "[i]f defendants were required to make a positive showing that sealed documents in fact contained exculpatory material,Brady violations would come to the attention of appellate courts only by the merest happenstance of confidential material falling into a defendant's hands"), cert. denied, 506 U.S. 962 (1992). Thus, this argument is without merit.
Third, we disagree with the State's contention that Land waived his right to request discovery of his correctional and juvenile records by not requesting those records in his motions made in the trial court. A close review of those motions shows that Land did request those records. In his Rule 32 petition, at pp. 20-21, Land alleged that his trial counsel was ineffective because he failed to investigate and offer mitigating evidence, which would have included his correctional and juvenile records. In his first motion for discovery, Land requested discovery of his juvenile and correctional records. See Motion for Discovery ofProsecution Files, Records, and Information Necessary to a FairRule 32 Evidentiary Hearing, p. 12. In his motion for "reconsideration," Land argued that he was "clearly constitutionally entitled to those records which predate his arrest for the current [offense]," and that "Such records are necessary to claims . . . [that counsel was ineffective during the penalty phase of his trial], for they may establish that a) Mr. Land was a model prisoner. . . ." Motion for Reconsideration of theDenial of Court-Ordered Discovery of Records Necessary to a Fair *Page 855 Rule 32 Evidentiary Hearing, p. 16. Thus, this argument is also without merit.
Fourth, we reject the State's argument that Land should not be allowed to discover the requested materials because, the State argues, he has not shown any connection with Taylor Hardin Secure Medical Facility, Bryce Hospital, or the Alabama Department of Human Resources. Land has alleged that persons from both Taylor Hardin and Bryce evaluated him. He also claims that he and his family had interaction with the Alabama Department of Human Resources. Furthermore, if these facilities have no documents that relate to Land's claims, they can simply say so. Merely determining whether such documents exist would not unduly burden the State.
Thus, Land presented the trial court with claims of ineffective assistance of counsel that are facially meritorious. In fact, these claims suggest several potential serious deficiencies in the performance of his trial counsel that, if proved, may entitle him to relief. Furthermore, we agree with Land that it would be practically impossible for him to show that he suffered prejudice from the deficient performance of his counsel unless he could show the trial court that mitigating evidence (which he has a reasonable basis to believe in fact exists) existed at the time of his trial and then argue, on the basis of that evidence, that a "reasonable probability" exists that a jury hearing the evidence would have recommended life imprisonment without parole. Cf. Jackson v. Herring, supra, 42 F.3d at 1364, 1369 (federal habeas evidentiary hearing "unearthed a great wealth of [mitigating evidence]" from which the defendant was able to show "that a reasonable probability exists that a jury hearing this evidence would have recommended life"). Therefore, we conclude that Land demonstrated to the trial court that he was entitled to the requested discovery (listed above), which is relevant to his claim that his trial counsel was ineffective at the penalty phase of his trial.
 B. The Guilt Phase of Land's Trial
Land contends in his mandamus petition that his trial counsel was ineffective at the guilt stage of his trial because, he says, his counsel did not adequately challenge his alleged waiver of rights made pursuant to Miranda v. Arizona, supra, on the basis that he lacked the mental capacity to make such a waiver. Land says that the documents pertinent to this claim that his trial counsel did not adequately challenge his Miranda waiver are his mental-health and correctional records; he says his mental-health history and his prior experiences with law-enforcement authorities are directly relevant to the question of the voluntariness of hisMiranda waiver. The State maintains that Land did not make this claim in his petition for postconviction relief.
The State is correct in arguing that Land did not present this claim in his Rule 32 petition as he has presented it in his mandamus petition. In his Rule 32 petition, Land alleged numerous ways in which he said his trial counsel was ineffective at the guilt stage of his trial. A failure to adequately challenge his waiver of his Miranda rights was not, however, among the shortcomings ascribed to Land's trial counsel. Land made a separate claim in his Rule 32 petition in which he challenged the admission during his trial of the statements he had made while in custody, arguing that the statements were inadmissible because, he said, police officers had continued to interrogate him after he had invoked his right to counsel and because, he further says, the statements were obtained through coercion and intimidation. Nowhere in this claim does Land mention the alleged ineffectiveness of his trial counsel. Moreover, the Miranda claim was dismissed by the trial court. Land has not shown that he is entitled to the discovery he seeks in connection with this dismissed claim.
 II. The Brady Claim
Land next argues that the trial court erred when it granted his initial request *Page 856 
but restricted discovery to the district attorney's files and refused to order discovery of other documents held by certain state agencies. He maintains that the state agencies involved in his case are required to provide him with requested Brady
material. He says that, in support of his request to the trial court, he attached a number of records obtained in response to his initial request, records indicating that officers from the Birmingham Police Department investigated and interviewed other suspects about the disappearance and murder of Candace Brown. He claims that the records of these investigations and interviews were never provided to him. Thus, he says, the trial court was required to order the production of these documents so that he could prove that the State committed a Brady violation.
The State contends that Land is not entitled to the requested discovery, for the following reasons: (1) because the trial court dismissed his Brady claims; (2) because Land has offered no evidence indicating that the records in question would lead to exculpatory information; (3) because the district attorney is not required to go on a "fishing expedition" to other state agencies; and (4) because Land is seeking to "fish through" the State's files in order to uncover a Brady claim.
The State correctly points out that Land is not entitled to the discovery requested relative to his Brady claim, because that claim has been dismissed. Land's Brady claim states:
 "Despite the heightened obligation upon the state in this capital proceeding, the state in this instance failed to provide a wealth of exculpatory evidence to Mr. Land. For example, the police failed to provide Mr. Land with fingerprint evidence collected from Brown's house which indicated that someone else had handled the glass that was broken. In addition, the state failed to provide evidence about police officers and other state agents that would have impeached or otherwise impugned upon their testimony. Further, the court blocked Brady discovery on at least one instance, by not granting Mr. Land access to grand jury transcripts or notes of the grand jury proceedings. Though the trial court offered to compare the testimony proffered at trial with that given at the grand jury proceedings, this apparently did not occur. Mr. Land was entitled to the grand jury transcripts in the same manner as he was entitled to all other Brady materials."
The trial court dismissed the claims relative to the fingerprints and the grand-jury proceedings because those claims were procedurally barred, pursuant to Rule 32.2(a). It dismissed the remainder of Land's Brady claim for a failure to comply with the specificity requirement of Rule 32.6(b). Because Land has noBrady claim pending in his Rule 32 petition, he has not shown that he is entitled to the discovery he seeks in connection with such a claim.[4]
Because Land's Brady claim has been dismissed, we do not address the remainder of the parties' arguments relative to that claim.
 Conclusion
Land has shown a clear legal right to the relief sought as to his ineffective-assistance-of-counsel claims that were not dismissed by the trial court. The trial court is directed to order production of the documents held by the agencies named in part I.A. of this opinion; to that extent, the mandamus petition is granted, but it is otherwise denied.
OPINION OF AUGUST 6, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING GRANTED; PETITION GRANTED IN *Page 857 
PART AND DENIED IN PART; WRIT ISSUED.
Hooper, C.J., and Maddox, Houston, Cook, See, Johnstone, and England, JJ., concur.
Brown, J., recuses herself.*
* Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.
[1] Land also asks this Court for a writ of mandamus directing the Court of Criminal Appeals to order the discovery he seeks. Rule 21(e) states that when an original petition for the writ of mandamus has been denied by a Court of Appeals, the petitioner may file a similar petition in this Court, seeking a writ directed to the trial court. Therefore, we do not address Land's request for a writ of mandamus directed to the Court of Criminal Appeals.
[2] The State does concede that Rule 32.4, Ala.R.Crim.P., allows the trial court, in its discretion, to allow "the taking of depositions for discovery or for use at trial." The State says, however, that this provision does not allow for discovery of documents and other things in the possession of the State.
[3] Ex parte Boatwright was decided before this Court adopted Rule 32, Ala.R.Crim.P., when a petition for postconviction relief was usually styled as a "petition for writ of error coram nobis." However, as Justice Maddox has noted: "The common law writ of coram nobis in criminal cases has been incorporated into Rule 32." 2 Hugh Maddox, Alabama Rules of Criminal Procedure § 32.0, p. 971 (2d ed. 1994).
[4] The State informs us in its brief in support of its application for rehearing that Land filed an amended Rule 32 petition in the circuit court on November 6, 1998, some four months after he had filed his mandamus petition with this Court. The claims in that amended petition, of course, are not before us.