976 So.2d 508 (2007)
Ex parte State of Alabama.
(In re STATE of Alabama
v.
Darryl Dewayne TURNER).
No. CR-06-1033.
Court of Criminal Appeals of Alabama.
June 29, 2007.
*509 Troy King, atty. gen., and Michael A. Nunnelley and Jasper B. Roberts, Jr., asst. attys. gen., for petitioner.
Haley A. Andrews and John M. Johnson, Birmingham; and Sidney Austin, Christopher Blanchard, Peter Flanagan, Sara Gourley, Kelly Huggins, Nicole Kopinski, Kathleen Kumer, and Alexa Warner, Chicago, Illinois, for respondent.
PER CURIAM.
The State of Alabama filed this petition for a writ of mandamus directing Judge James W. Woodroof to set aside his ruling on Darryl Dewayne Turner's motion for discovery related to Turner's petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. We grant the petition and issue the writ.
In 1999, Turner was convicted of capital murder for intentionally murdering Barbara Wilson during the course of a robbery and a rape, violations of §§ 13A-5-40(a)(2) and 13A-5-40(a)(3), Ala.Code 1975. Turner was sentenced to death.[1] His conviction was affirmed on direct appeal. See Turner v. State, 924 So.2d 737 (Ala.Crim. App.2002). The Alabama Supreme Court denied certiorari review and we issued the certificate of judgment on September 30, 2005.
On October 2, 2006, Turner filed a Rule 32 petition attacking his conviction and sentence.[2] In October 2006, Turner filed *510 two discovery motions requesting the prosecution's file and numerous other records from various state and nonstate agencies. The State filed a response to Turner's discovery motions, and Judge Woodroof held a hearing. At the hearing Judge Woodroof granted Turner discovery as to the following: (1) all documents relating to the employment, training, discipline, promotions, or demotions of Detective Heath Emerson and Officer Lee Kennemer; (2) all records maintained by the Limestone County jail relating to Turner; and (3) all records maintained by the Alabama Department of Human Resources ("DHR") relating to Turner, Beverly Turner (Darryl's mother), Dwight Turner (Darryl's father), and Carolyn Coleman (Darryl's grandmother). The State then filed this mandamus petition requesting that we direct the circuit court to set aside its ruling allowing Turner the above discovery, except as to the discovery of Turner's own DHR files, to which the State has no objection.
Turner contends that the State has failed to show that it "does not have an adequate remedy by ordinary appeal;" therefore, he argues that the State cannot seek the remedy of mandamus. (Turner's answer at page 7.) He cites Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810 (Ala.2003), to support his argument. In Ocwen Federal Bank, the Alabama Supreme Court stated:
"Generally, an appeal of a discovery order is an adequate remedy, notwithstanding the fact that that procedure may delay an appellate court's review of a petitioner's grievance or impose on the petitioner additional expense; our judicial system cannot afford immediate mandamus review of every discovery order."
872 So.2d at 813 (footnote omitted).
Turner fails to consider that the present action is a Rule 32 proceeding, which is governed by the Alabama Rules of Criminal Procedure, specifically Rule 32.4, Ala. R.Crim.P., and not a civil action, which is governed by the Alabama Rules of Civil Procedure. The State has only a limited right to appeal in the criminal context.[3] In relation to a Rule 32 proceeding the State has no right to appeal a prejudgment ruling concerning discovery. Accordingly, the State's only remedy is to file a petition for a writ of mandamus. Thus, this case is correctly before this Court by way of this extraordinary petition. See Ex parte Land, 775 So.2d 847 (Ala.2000).
Also, the State filed this petition within the presumptively reasonable time period set out in Rule 21(a), Ala.R.App.P. The circuit court granted Turner's motion for discovery at the motion hearing on March 15, 2007. The State filed this extraordinary petition on March 22, 2007  seven days later. The Alabama Supreme Court in Ex parte Thomas, 828 So.2d 952 (Ala. 2001), held that the presumptively reasonable time for the State to file a mandamus petition is within seven days of the date of the ruling that is the subject of the petition. This petition is thus timely.
In Ex parte Land, the Alabama Supreme Court set out the standard for discovery in postconviction proceedings. The Court stated:

*511 "We agree with the Court of Criminal Appeals that `good cause' is the appropriate standard by which to judge postconviction discovery motions. In fact, other courts have adopted a similar `good-cause' or `good-reason' standard for the postconviction discovery process. See [State v.] Marshall, [148 N.J. 89, 690 A.2d 1 (1997)]; State v. Lewis, 656 So.2d 1248 (Fla.1994); People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See Fitzgerald, supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's Marshall case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that `an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, i.e., one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' Ex parte Boatwright, 471 So.2d 1257, 1258 (Ala.1985).
"We emphasize that this holding  that postconviction discovery motions are to be judged by a good-cause standard  does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord Lewis, supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to `fish' through official files and that it `is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'
"That having been said, we must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must evaluate Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause."
775 So.2d at 852-53 (footnote omitted).
This Court in Jackson v. State, 910 So.2d 797 (Ala.Crim.App.2005), stated:

*512 "Though Alabama has had little opportunity to define what constitutes `good cause,' in Ex parte Mack, 894 So.2d 764, 768 (Ala.Crim.App.2003), we quoted with approval an Illinois case the Alabama Supreme Court relied on in Land  People v. Johnson, 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002):
"`"A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See People ex rel. Daley v. Fitzgerald, 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988); People v. Rose, 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery. . . . Accordingly, the trial court should allow discovery only if the defendant has shown `good cause,' considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley, 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see People v. Fair, 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court's denial of a post-conviction discovery request only for an abuse of discretion. Fair, 193 Ill.2d at 265, 250 Ill. Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a `fishing expedition.'"'
"894 So.2d at 768-69 (quoting Johnson, 205 Ill.2d at 408, 275 Ill.Dec. at 836-37, 793 N.E.2d at 607-08). See also State v. Lewis, 656 So.2d 1248 (Fla.1994).
"The New Jersey Supreme Court in State v. Marshall, 148 N.J. 89, 690 A.2d 1 (1997), a case also cited with approval by the Alabama Supreme Court in Land, stated:
"`We anticipate that only in the unusual case will a PCR [postconviction relief] court invoke its inherent right to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he brings to the PCR court's attention. Moreover, we note that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." People v. Gonzalez, 51 Cal.3d 1179, 275 Cal.Rptr. 729, 776, 800 P.2d 1159, 1206 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). The filing of a petition for PCR is not a license to obtain unlimited information from the State, but a means through which a defendant may demonstrate to a reviewing court that he was convicted or sentenced in violation of his rights. . . .
"`Moreover, consistent with our prior discovery jurisprudence, any PCR discovery order should be appropriately narrow and limited. "[T]here is no postconviction right to `fish' through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist." Gonzalez, supra, 275 Cal. Rptr. at 775, 800 P.2d at 1205; see Deputy v. Taylor, 19 F.3d 1485, 1493 (3d Cir.), cert. denied, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); State v. Thomas, 236 Neb. 553, 462 N.W.2d 862, 867-68 (1990). However where a defendant presents *513 the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged, the court has discretionary authority to grant relief. See Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. § 2254 Rule 6(a); [State v.] Lewis, . . . 656 So.2d [1248,] 1250 [(Fla.1994)]; [People ex rel. Daley v.] Fitzgerald, [123 Ill.2d 175, 183,] 121 Ill.Dec. [937,] 941, 526 N.Ed.2d [131,] 135 [(1998)] (noting that "good cause" standard guards against potential abuse of PCR discovery process).'"
Jackson v. State, 910 So.2d at 801-03.
More recently in Ex parte Perkins, 941 So.2d 242 (Ala.2006), the Alabama Supreme Court addressed this issue. In determining whether the Rule 32 petitioner had shown good cause, the court evaluated the merits of Perkins's claim that his counsel's performance was ineffective for failing to investigate Perkins's dysfunctional background. The Supreme Court wrote:
"While the police records Perkins seeks may in fact show the dysfunctional environment in which he grew up, according to Ex parte Perkins, 808 So.2d 1143, 1145 (Ala.2001), judgment vacated on other grounds by Perkins v. Alabama, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002), there obviously was evidence presented during sentencing showing the environment in which Perkins grew up. . . .
"`. . . . '
". . . . Apparently, Perkins's trial counsel did perform an investigation and did present evidence sufficient to convince the trial court of the existence of mitigating factors substantially similar to that Perkins now seeks to prove in his postconviction petition. Therefore, we conclude that the documentary evidence in the form of law-enforcement records Perkins now seeks would simply be cumulative of the evidence his counsel presented during the sentencing phase of Perkins's trial."
941 So.2d at 248-49.
The State initially asserts that the circuit court erred in failing to consider the merits of the issues the requested discovery was to support. The above cases clearly show that we must evaluate the merits of the underlying issues to determine whether the petitioner has established good cause for the discovery. As we said in State v. Stallworth, 941 So.2d 327, 331 (Ala.Crim.App.2006):
"The Alabama Supreme Court in Land noted that the main emphasis in determining whether good cause is shown is a determination of the merits and the procedural posture of the underlying claims for which the discovery is sought to substantiate. The Alabama Supreme Court in Land stated:
"`[W]e must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause.'
"775 So.2d at 853. In [Ex parte] Hooks, [822 So.2d 476 (Ala.Crim.App.2000),] we stated:
"`[A] claim that is procedurally barred . . . in a postconviction petition clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery *514 of materials related to that claim. See Land.'
"822 So.2d at 481."

I.
The State argues that the circuit court erred in granting Turner's request for "discovery of any and all documents relating to the employment, training, discipline, and promotions or demotions of Detective Heath Emerson and Officer Lee Kennemer." (State's petition at page 12.) In essence, Turner seeks the officers' personnel files. The State asserts that the documents do not support any claim in the Rule 32 petition; therefore, it argues, Turner failed to establish good cause.
To evaluate this claim we first consider the merits of the issues raised in Turner's Rule 32 petition. Turner alleged that his counsel's performance was ineffective for failing to properly cross-examine and impeach Det. Emerson about his knowledge of inconsistent statements made by Tavares McCurley  a State witness who testified at Turner's trial.[4] He contends in his Rule 32 petition that Det. Emerson erroneously testified that he had not interviewed McCurley when police records show that he conducted a nine-hour interview of McCurley on February 27, 1996. Turner further alleged in his Rule 32 petition that counsel failed to use this information to impeach Det. Emerson.
Turner further asserted in his Rule 32 petition that counsel failed to impeach Det. Emerson and Officer Lee Kennemer concerning their knowledge of other suspects and their suspicions concerning Trent Rainey  one of Turner's codefendants who testified at Turner's trial.
The State, in response to Turner's Rule 32 petition, asserted the following:
"Turner's allegation fails to state a claim. The petition faults trial counsel for failing to question [Det.] Emerson on his knowledge of McCurley's inconsistent statement, but fails to demonstrate how Turner was prejudiced given that significant evidence demonstrates Turner's culpability and that McCurley's credibility was effectively challenged during his own testimony. Similarly, even if [Det.] Emerson testified incorrectly about when Harris or Turner was first suspected in the crime, it is irrelevant given that the prosecution theory was that both were involved and both were eventually convicted. . . . Even had trial counsel questioned [Det.] Emerson just as the petition suggests was appropriate, the facts alleged fail to demonstrate that the jury's determination would have been affected. Because Turner cannot satisfy his burden of proving deficient performance or prejudice, this claim should be summarily dismissed under Rule 32.7(d) of the Alabama Rules of Criminal Procedure."[5]
*515 A review of Turner's Rule 32 petition shows that Turner failed to allege how he was prejudiced by counsel's failure to cross-examine and impeach Det. Emerson or Officer Kennemer. Thus, Turner failed to satisfy his burden of pleading under Rule 32.3 and 32.6(b), Ala.R.Crim.P., and he failed to establish good cause for the disclosure of information related to this claim. See Ex parte Perkins, 941 So.2d at 249.
Even if this claim was sufficiently pleaded, we question whether Turner could satisfy the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have reviewed the record of Turner's trial.[6] At trial, Det. Emerson testified on cross-examine that he was present when Chris Harris and Tavares McCurley were interviewed but did not participate in the questioning, that McCurley told police more than one version of the events surrounding Wilson's death, that during Turner's interview he repeatedly questioned Turner about Rainey's involvement, that Emerson was not surprised when he learned of Rainey's involvement in the murder, and that Turner had been reluctant to say anything about Rainey. Also, McCurley was thoroughly cross-examined about the fact that he gave several different versions of the events surrounding Wilson's murder to police. There is no indication that a more thorough cross-examination of Det. Emerson or Officer Kennemer would have had any impact on, much less resulted in, a different verdict.
Furthermore, Alabama has never had occasion to specifically address whether the personnel files of a police officer are discoverable during a postconviction proceeding.[7] However, other jurisdictions have limited the right to obtain this information during discovery in a criminal case. See Jeffrey F. Ghent, Annotation, Accused's Right to Discovery or Inspection of Records of Prior Complaints Against, or Similar Personnel Records of Peace Officer Involved in the Case, 86 A.L.R.3d 1170, 1176 (1978) ("In nearly all of the cases within the scope of this annotation in which no discovery or inspection was allowed, the courts have stressed the speculative or unsupported nature of the defendant's belief or suspicion that the officer's personnel records would or might contain relevant and material information favorable to the defendant."); Gary R. DeFilippo, To Disclose or Not to Disclose: A Discussion of Civil Rights Law § 50-A, Protecting Law Enforcement Officers' Personnel Records From Unwarranted Review, 14 J. Suffolk Acad. L. 103, 104 (2000) ("Criminal defendants have sought to gain access to police personnel records for the purpose of using information in those records to impeach the credibility of the police officer's testimony. The hope is that the records will contain information sufficient to raise reasonable doubt in the juror's mind of the defendant's guilt. This hope, suspicion, or possibility of finding *516 evidence of `prior vicious, immoral or illegal activities' on the part of the police officer is just the kind of `fishing expedition' the courts have sought to prevent." (footnote omitted)).
In State v. Blackwell, 120 Wash.2d 822, 845 P.2d 1017 (1993), the Washington Supreme Court stated:
"Defense counsels' broad, unsupported claim that the police officers' personnel files may lead to material information does not justify automatic disclosure of the documents. See State v. Kaszubinski, 177 N.J.Super. 136, 140-41, 425 A.2d 711 (1980) (defendant not entitled to even an in camera inspection of police officer's personnel file without a showing that the file contained material information that might bear on the officer's credibility); People v. Gissendanner, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979) (defendant made no factual showing that it was reasonably likely the police officer's personnel file contained relevant and material information); People v. Condley, 69 Cal.App.3d 999, 138 Cal.Rptr. 515, cert. denied, 434 U.S. 988, 98 S.Ct. 619, 54 L.Ed.2d 483 (1977) (defendant made no showing of good cause or plausible justification for inspection); State ex rel. Johnson v. Schwartz, 26 Or.App. 279, 552 P.2d 571 (1976) (that defendant's attorney `heard' of another similar incident is not a sufficient showing); State v. Sagner, 18 Or. App. 464, 525 P.2d 1073 (1974) (whether the information exists is purely conjecture)."
120 Wash.2d at 829-30, 845 P.2d at 1021. See State v. Butts, 640 S.W.2d 37, 39 (Tenn.Crim.App.1982) ("[C]ourts generally deny such discovery requests when the defense does not show that an inspection of the personnel records would yield material evidence.").
In Burrell v. State, 727 So.2d 761, 766 (Miss.Ct.App.1998), the Mississippi Court of Appeals stated:
"The appellant asserts in his fifth assignment of error that the trial court denied him his right to prepare an adequate defense by overruling appellant's motion to strike the testimony of Captain Kitchens, which was based on the court's refusing to allow the defense to discover the personnel file of Kitchens. Burrell advances no legal authority in support of this argument except to recite broad theories of the right to cross-examination. However, the particular error which he advances has been addressed by our supreme court in White v. State, 498 So.2d 368 (Miss.1986). The appellant in White argued that he was entitled to personnel files of a detective who was a witness for the prosecution in order to `sift through in hopes of finding something damaging with which to impeach him as a witness.' Id. at 371. The Mississippi Supreme Court held in White that `the personnel file of a potential witness is not among the required disclosure in Rule 4.06, nor does appellant cite any authority in support of this contention.' Id. Furthermore, the court stated that to require an employer to `surrender the personnel files of an employee to be "sifted through" in such a fashion for no good cause would be an unwarranted invasion of privacy which this Court, under the circumstances, will not condone.' Id."
We hold that the circuit court erred in granting Turner's discovery request for the "documents relating to the employment, training, discipline, promotions, or demotions of Detective Heath Emerson and Officer Lee Kennemer" because Turner failed to show good cause for the disclosure of these documents. This discovery request is just the type of fishing *517 expedition the Alabama Supreme Court condemned in Land. Discovery in postconviction proceedings "`is not a device for investigating possible claims, but a means of vindicating actual claims.'" Land, 775 So.2d at 852.

II.
The State further contends that the circuit court erred in granting Turner access to his Limestone County jail records. It asserts that there is no claim in the Rule 32 petition related to these records; therefore, it argues, Turner has failed to show good cause for their disclosure.
Turner alleged in his Rule 32 petition that counsel was ineffective for failing to present the testimony of Sgt. James Pugh who, he says, could have testified that Turner had no disciplinary infractions while he was incarcerated at the Limestone County jail awaiting his capital-murder trial. He asserts that this is mitigation evidence according to Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), that should have been presented at the penalty phase of his trial.
The record shows that the sentencing hearing before the jury was waived after Turner became disruptive when the jury returned a verdict finding him guilty of capital murder. During the sentencing hearing before the circuit court the defendant told the court that he had become a Christian while he was incarcerated. The probation officer's report also states that Turner is a born-again Christian. Turner's mother and his grandfather testified that they were shocked by Turner's involvement in the murder because, they said, such conduct was totally uncharacteristic for Turner.
Thus, it appears that some of the information which Turner sought was, in part, cumulative to other evidence that had been presented. Also, the information contained in the jail records was information that was within the knowledge of Sgt. Pugh and/or Turner. "This information was clearly available through other less intrusive means; therefore, [the petitioner] can show no good cause for disclosing information related to this claim." Jackson v. State, 910 So.2d at 808. The circuit court erred in granting Turner discovery of the records relating to his incarceration at the Limestone County jail.

III.
The State next argues that the circuit court abused its discretion in granting Turner access to the DHR records related to Beverly Turner (his mother), Dwight Turner (his father), and Carolyn Coleman (his grandmother).[8] Turner asserts that he is entitled to this information because the files may contain additional mitigation evidence that should have been presented.
"The Alabama Supreme Court in Land did not address discovery as it relates to confidential files on individuals other than the petitioner. However, this Court has noted that Alabama law protects the confidentiality of DYS and DHR records. See §§ 12-15-100 and 12-15-101, and § 38-2-1, Ala.Code 1975. Because these records are confidential, the most a party is entitled to, upon a showing of good cause, is an in camera inspection of the documents by a circuit court. See Gibson v. State, 677 So.2d 233 (Ala.Crim.App.1994). A party is not entitled to unfettered access to records that are not related to him and that are maintained by state agencies specifically *518 charged with guarding the confidentiality of those records. See Jackson, supra."
Ex parte Perkins, 920 So.2d at 605 (footnote omitted). We further stated:
"Certainly, it was not necessary to show the exact amount that Perkins's mother received from the government every month in order to show that Perkins was raised in a poverty-stricken household. This information was available from other sources, without resort to subpoenaing the federal government files. As Perkins states in his mandamus petition, the one record he was able to obtain from DYS shows that at the time DYS was involved Perkins was living in a `shack' in Berry, Alabama. When evidence is available through less intrusive means, a petitioner fails to establish good cause for requested discovery. See Jackson, supra. Therefore, we cannot say that Perkins has a clear legal right to relief on this claim."
920 So.2d at 606. Here, the information Turner sought was information that was available by questioning Turner's family members. See Ex parte Perkins, 920 So.2d at 606. Accordingly, Turner failed to show good cause for this discovery. Thus, the circuit court erred in granting Turner discovery of DHR files relating to his family.
For the foregoing reasons, we grant the State's petition and issue a writ of mandamus. Judge Woodroof is directed to set aside his ruling allowing Turner discovery of the personnel files of Det. Emerson and Officer Kennemer, the jail records maintained by the Limestone County jail, and the DHR records related to Turner's family members.
PETITION GRANTED; WRIT ISSUED.
BASCHAB, P.J., and McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
NOTES
[1] Christopher Harris and Trent Rainey were also charged with capital murder in connection with Wilson's murder.
[2] The limitations period for Turner to file a Rule 32 petition expired on September 30, 2006. See Rule 32.2(c), Ala.R.Crim.P. However, because that date fell on a Saturday Turner had until the next business day, October 2, 2006, to file a timely Rule 32 petition. See Rule 1.3(a), Ala.R.Crim.P.
[3] The State has the right to appeal certain pretrial rulings such as a ruling holding a statute unconstitutional, suppressing evidence, dismissing an indictment or any part of an indictment, or quashing an arrest warrant. See § 12-22-91, Ala.Code 1975, and Rule 15.7, Ala.R.Crim.P. The State also may appeal an order granting a habeas corpus petition or an order granting a Rule 32, Ala. R.Crim.P., petition. See § 12-22-90(a), Ala. Code 1975, and Rule 32.10, Ala.R.Crim.P.
[4] 

"Tavares McCurley, Chris Harris's cousin, testified that on February 21, 1996, Turner came by his house and asked him to go with him to `get a lick'  meaning, he said, to go rob someone. He declined. McCurley said that Turner then walked to the back of the house to talk with Chris Harris. He said that the two talked for about 20 minutes and that they left together. McCurley said that sometime later that same day Turner came back to his house and told him to look out the window. McCurley said when he looked out he saw Wilson's Cadillac parked in front of the house. McCurley testified that Turner told him that he had `killed the bitch.' He told McCurley that he killed her because he did not want her to tell police what they had done."
Turner, 924 So.2d at 746.
[5] The State made a similar argument as to each claim raised by Turner concerning the cross-examination and impeachment of Det. Emerson and Officer Kennemer.
[6] This Court may take judicial notice of its records. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App. 1992).
[7] In State v. Stallworth, 941 So.2d 327, 341 (Ala.Crim.App.2006), we held that there was no good cause to allow the defendant to obtain the employment files of several police officers because no claim in the defendant's petition related to the discovery request. In Drinkard v. State, 777 So.2d 225, 255 (Ala. Crim.App.1998), we upheld a circuit court's refusal to order the State to disclose the criminal records of a police officer who had investigated a defendant's case. In Minor v. State, 780 So.2d 707, (Ala.Crim.App. 1999), we held that there was no Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation when the State failed to disclose the personnel files and other information regarding the alleged bias of State witnesses.
[8] As noted earlier, the circuit court allowed Turner access to his own DHR records; however, the State does not challenge the ruling insofar as it allows Turner access to his own DHR records.