941 So.2d 242 (2006)
Ex parte Roy Edward PERKINS.
(In re State of Alabama
v.
Roy Edward Perkins).
1041735.
Supreme Court of Alabama.
April 21, 2006.
*243 William R. Montross, Jr., and Vanessa M. Buch, Atlanta, Georgia, for petitioner.
Troy King, atty. gen., and Henry M. Johnson, asst. atty. gen., for respondent the State.
William S. Donaldson, respondent circuit judge.
*244 Chris Hargett, chief asst. district atty., Tuscaloosa, for Tuscaloosa County District Attorney's Office.
LYONS, Justice.
Roy Edward Perkins petitions this Court for a writ of mandamus. We deny the petition.

I. Facts and Procedural History
In 1994, Perkins was convicted of capital murder and was sentenced to death. His conviction and sentence were upheld on direct appeal. Perkins v. State, 808 So.2d 1041 (Ala.Crim.App.1999), aff'd, 808 So.2d 1143 (Ala.2001), vacated and remanded, Perkins v. Alabama, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002), aff'd on remand, 851 So.2d 453 (Ala.2002). In January 2004, Perkins filed in the Tuscaloosa Circuit Court a petition for postconviction relief pursuant to Rule 32, Ala. R.Crim. P. According to his mandamus petition and the attached exhibits, Perkins claimed in his Rule 32 petition, among other things, that his trial counsel had been ineffective for failing to investigate the existence of mitigating evidence and to present such mitigating evidence during the sentencing phase of Perkins's murder trial. Perkins also alleged in his Rule 32 petition that his appellate counsel on direct appeal had been ineffective for failing to allege ineffective assistance of trial counsel based on trial counsel's failure to investigate and to present mitigating evidence during sentencing. Upon consideration of Perkins's Rule 32 petition, the circuit court granted him an evidentiary hearing.[1]
Perkins filed a discovery motion with the circuit court in which he requested access to, among other things, certain records relating to his incarceration for offenses other than the current offense that are in the possession of the Alabama Board of Pardons and Paroles ("the Board"), as well as records relating to certain members of his family that are in the possession of various Alabama law-enforcement agencies. He contended in his motion that those records would reveal the mitigating evidence that should have been presented to the trial court during the sentencing phase of his trial. The circuit court denied Perkins's discovery motion without explanation, and Perkins filed a petition for a writ of mandamus with the Alabama Court of Criminal Appeals, asking that court to order the circuit court to grant his discovery motion. The Court of Criminal Appeals ruled that Perkins was not entitled to inspect the Board's records because, based on the Court of Criminal Appeals' reading of Ex parte Alabama Board of Pardons & Paroles, 814 So.2d 870 (Ala.2001), the Board's records were confidential and were thus not subject to inspection. Therefore, the Court of Criminal Appeals held, Perkins was not entitled to a writ of mandamus on that issue. The Court of Criminal Appeals also determined that the law-enforcement records requested by Perkins were public records, available to Perkins without a court order. Therefore, the Court of Criminal Appeals held, he was not entitled to a writ of mandamus on that issue. The Court of Criminal Appeals did, however, hold that Perkins was entitled to discovery of other documents not relevant to the instant mandamus petition. Ex parte Perkins, 920 So.2d 599 (Ala.Crim.App.2005) ("Perkins I"). Perkins then filed a petition for a writ of mandamus in this Court, asking us to direct the circuit court to provide him with access to the requested records.

*245 II. Standard of Review

"`The writ of mandamus is a drastic and extraordinary writ, to be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court." Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala. 1995).' Ex parte Carter, [807 So.2d 534] at 536 [(Ala.2001)]."
Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001). "A petition for a writ of mandamus is the appropriate vehicle for challenging a trial court's ruling on a discovery motion." Ex parte Steiner, 730 So.2d 599, 600 (Ala.1998). Circuit courts are vested with discretion in deciding whether to grant postconviction discovery requests. Ex parte Land, 775 So.2d 847, 850 (Ala. 2000); and Jackson v. State, 910 So.2d 797, 802 (Ala.Crim.App.2005).
"`[G]ood cause' is the appropriate standard by which to judge postconviction discovery motions. . . .
". . . [I]n order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir.1986) (`a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), cert. denied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
"`The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'"
Ex parte Land, 775 So.2d at 852-53. As noted, the circuit court granted Perkins an evidentiary hearing on the ineffective-assistance-of-counsel issue raised in his Rule 32 petition but nevertheless denied, without explanation, Perkins's discovery request.

III. Analysis

A. Records of the Board
Perkins contends that records in the possession of the Board, which on two occasions had voted to parole Perkins on earlier convictions, contain evidence indicating that Perkins is able to adapt positively to structured living while incarcerated. Perkins contends that, for each time he was paroled, the files maintained by the Board would contain documents demonstrating that the Board determined that Perkins qualified for parole based on his good conduct while in prison. Perkins contends that those records would have rebutted the State's argument at trial that Perkins could not be a compliant and nonviolent inmate and therefore that he was not a good candidate for a sentence of life imprisonment without parole. Perkins states that he seeks only "the records prepared by each member [of the Board] who favored [Perkins's] parole" on those earlier convictions. (Perkins's mandamus petition at 13.)
The Court of Criminal Appeals, in denying in part Perkins's mandamus petition in Perkins I, held that the Board's records are confidential and, therefore, are not subject to discovery. The Court of Criminal Appeals in Perkins I relied on *246 this Court's holding in Ex parte Alabama Board of Pardons & Paroles, supra. In that case, the Board had been subpoenaed by a grand jury and ordered to produce certain records in its possession. We held that the Board was entitled to a writ of mandamus directing the circuit court to vacate its order directing the Board to produce the records. Our ruling was based on the plain language of § 15-22-36(b), Ala.Code 1975:
"`(b) Each member of the Board of Pardons and Paroles favoring a pardon, parole, remission of a fine or forfeiture or restoration of civil and political rights shall enter in the file his reasons in detail, which entry and the order shall be public records, but all other portions of the file shall be privileged.'"
814 So.2d at 872 (emphasis added in Board of Pardons & Paroles). We noted that "[t]he Montgomery County district attorney contend[ed] that the Legislature did not intend to create a privilege that would thwart a grand jury's performance of its responsibility to investigate possible indictable offenses by members of the Board." 814 So.2d at 872 (emphasis added). It is clear from a reading of the opinion that the Court in Board of Pardons & Paroles was not dealing with a request to view only records indicating the Board members' reasons for favoring the parole of an inmate. In contrast, in the instant case, Perkins states that he seeks only the records prepared by each member who favored parole, and the State concedes that, based on a plain reading of § 15-22-36(b), records reflecting the reasons on which members of the Board base their granting of parole are public records. We agree, and we hold that Perkins has a legal right to inspect the Board's records indicating those reasons.[2]
The State argues that Perkins is not entitled to a writ of mandamus because, it says, he has not shown that he has no other adequate remedy at law. The State argues that, because the records he requests are public records, Perkins can simply request their production from the Board without a court order. The State further alleges that Perkins has not taken any independent action to obtain those records. Perkins, on the other hand, contends that his postconviction counsel has attempted to obtain the records, but the Board refused his counsel access to the records. He points out that, in his motion for discovery, he pleaded that his postconviction counsel spoke with a representative of the Board who stated that the Board would not release any of Perkins's records without a court order. However, Perkins does not cite any direct evidence showing the Board's refusal to produce Perkins's records. While we note that Perkins is entitled by law to inspect the records of the Board showing its members' reasons for "favoring a pardon, parole, remission of a fine or forfeiture or restoration of civil and political rights," § 15-22-36(b), this Court is not equipped to resolve the factual dispute of whether Perkins has actually requested those records. Therefore, Perkins has not shown that he has no other adequate remedy at law with respect to this issue; he is not entitled to a writ of mandamus directing the circuit court to grant his discovery motion as to the Board's records.

B. Records of Law-Enforcement Agencies

1.
Perkins argues that he is entitled to review certain records of the Tuscaloosa *247 Police Department, the Tuscaloosa County Sheriff's Department, the Fayette Police Department, the Fayette County Sheriff's Department, and the Berry Police Department. He contends that records in the possession of those law-enforcement agencies relating to certain members of his family will show the environment in which Perkins was raised, mitigating evidence he contends should have been presented during the sentencing phase of his trial. Perkins states that he requires not only records indicating his family members' criminal convictions, but also "the entire police and sheriff's department files regarding each family member, including, for example, all the police and incident reports, statements, notes from interviews with family members and witnesses, and photographs." (Perkins's reply brief at 16.)
The State concedes that convictions are matters of public record. Therefore, the State contends, Perkins can obtain the records of the convictions of his family members without a court order. Perkins, however, contends that the law-enforcement agencies have denied his counsel's requests for the records of those law-enforcement agencies. However, he again fails to cite any direct evidence of such a denial. Although we conclude that Perkins has a legal right to inspect the records of convictions of his family members, he has not shown that he has been denied that right and that he has no other adequate remedy at law. Therefore, he is not entitled to the writ of mandamus on this issue.

2.
As noted, Perkins contends that he seeks more than just the notices of conviction from the police records relating to his family members. Rather, he seeks "the entire police and sheriff's department files regarding each family member, including, for example, all the police and incident reports, statements, notes from interviews with family members and witnesses, and photographs." The State argues that Perkins has not shown good cause for this discovery and is therefore not entitled to the writ of mandamus ordering that those records be produced. As noted, in order to show good cause for obtaining discovery, Perkins must allege facts that, if proved, would entitle him to relief.
According to Perkins's discovery motion, his Rule 32 claim that his trial counsel were ineffective is based on his contention that counsel simply failed to "investigate, obtain or present mitigating evidence at the penalty phase" and that counsel did not do so based on a "strategic or tactical reason."[3] Perkins contends that the evidence his counsel failed to discover and to present during sentencing would have shown that Perkins grew up in a neglectful and abusive environment. Perkins contends in his mandamus petition that, rather than investigate and rely on institutional documentary evidence during the sentencing phase, trial counsel simply relied on the recollections of Perkins and his family members, which, Perkins argues, was unreasonable because some of *248 Perkins's family members whom counsel contacted are mentally handicapped and because Perkins himself has an IQ in the 70s, is mentally ill, and suffers from brain damage.
Perkins contends that law-enforcement officers were dispatched to his childhood home on several occasions to investigate complaints of domestic violence, abuse, and public drunkenness. Perkins contends that his trial counsel, during the sentencing phase, presented a three-page "Social History and Assessment" indicating that Perkins grew up in a large farmhouse, that his mother suffered no complications while she was pregnant with him, that he had a close relationship with his sister, that he was a good and polite child with no significant problems, that there was no history of mental illness in his immediate family, and that he suffered no significant childhood traumas. Perkins contends that, contrary to that statement, the law-enforcement records he seeks will show "the incredible violence into which Mr. Perkins was born and raised." (Perkins's discovery motion at 44.) He contends that the law-enforcement records, along with other documentary evidence, will show that
"the house he grew up in was a dilapidated shack with trash thrown about; that Mr. Perkins'[s] mother was almost constantly drunk during her pregnancies and throughout Mr. Perkins'[s] childhood; that Mr. Perkins'[s] stepfather . . . repeatedly beat him and his sister; that [his stepfather] frequently raped Mr. Perkins'[s] sister; that the Perkins family had little to no money; that Mr. Perkins was neglected and abused by his family, given no food to eat and no clothes to wear; that Mr. Perkins ran away from home at the age of nine to get away from the abuse; that he was forced to steal food to feed himself and clothes to wear; that he would sneak into the school building to find shelter at night; that his extended family was as violent as his immediate family; and that many members of his family suffer from severe mental illness and physical disabilities."
(Perkins's discovery motion at 4-5.) Perkins also contends that the requested records will demonstrate the following:
"Both his mother and stepfather were repeatedly arrested for drunkenness and violence toward each other and toward their children. The Fayette and Berry police were repeatedly called to the Perkins[es]' home on reports of neglect, drunkenness and domestic abuse. Evidence suggests that many of these incidents also involved weapons. Even at Mr. Perkins'[s] maternal grandmother's house, the family violence was rampant. Family reports indicate that the families from the two houses would fire shotguns at each other from across the property, the violence escalating daily. Police and Sheriff's department reports are necessary to verify this information.
". . . [I]nformation contained in the records . . . demonstrates Mr. Perkins'[s] complete lack of positive role models and guidance as a child. Both of his parents were almost constantly drunk and incarcerated during his early years. And extended family members were no different. Almost all of Mr. Perkins'[s] close family were being arrested and incarcerated for the majority of his childhood."
While the police records Perkins seeks may in fact show the dysfunctional environment in which he grew up, according to Ex parte Perkins, 808 So.2d 1143, 1145 (Ala.2001), judgment vacated on other grounds by Perkins v. Alabama, 536 U.S. 953, 122 S.Ct. 2653, 153 L.Ed.2d 830 (2002), there obviously was evidence presented during sentencing showing the environment *249 in which Perkins grew up. In deciding Perkins's sentence, the trial court found the existence of the following mitigating factors:
"`5. [Perkins] lacked socialization and had a horrible childhood, involving the death of [his] father, the drowning of his brother in his presence, the sexual abuse of his sister by his stepfather in his presence, physical abuse of [Perkins] by his stepfather, being run away from home at a very early age and being sexually abused.
"`. . . .
"`7. [Perkins] and his family were very poor, and [Perkins] had to "raise himself." His mother and stepfather and other family members were alcoholics.'"
808 So.2d at 1145. Apparently, Perkins's trial counsel did perform an investigation and did present evidence sufficient to convince the trial court of the existence of mitigating factors substantially similar to that Perkins now seeks to prove in his postconviction petition. Therefore, we conclude that the documentary evidence in the form of law-enforcement records Perkins now seeks would simply be cumulative of the evidence his counsel presented during the sentencing phase of Perkins's trial.
The Court of Criminal Appeals' opinion addressing Perkins's direct appeal from his conviction and sentence reveals that, during the sentencing phase of Perkins's trial, Perkins's counsel elicited testimony from two expert defense witnesses indicating that Perkins grew up in an abusive and traumatic environment. Those experts based their opinions on interviews of Perkins and his family, as well as on Perkins's medical and prison records. Perkins v. State, 808 So.2d 1041, 1127 (Ala.Crim.App. 1999). Perkins alleges, however, that his trial counsel should have presented evidence of his dysfunctional background through documents and records and should not have relied on the recollections of Perkins and his family. In effect, Perkins argues that his counsel's failure to present documentary evidence amounted to ineffective assistance. However, the cases Perkins cites in support of his argument are distinguishable. He cites Rompilla v. Beard, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); and Ex parte Land, 775 So.2d 847, 853 (Ala.2000), all cases dealing with trial counsel's failure to properly investigate and present evidence indicating a defendant's dysfunctional family background. Those cases, however, involved trial counsel's complete failure to discover and present such mitigating evidence; they did not involve the question of whether counsel is ineffective if counsel chooses to present the mitigating evidence through expert testimony based on interviews with the defendant and his family members, instead of through objective documents.
Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); and Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), all cited by Perkins, hold only that, during the sentencing phase of a capital trial, a defendant has the right to present mitigating evidence indicating a dysfunctional family background. Those cases did not involve the attempt to present posttrial evidence that was merely cumulative of mitigating evidence presented during the sentencing phase, and they did not draw a distinction between expert mitigating testimony based on interviews with the defendant and his family members, on the one hand, and objective documentary evidence, on the other.[4]
*250 Perkins also cites Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), for the proposition that effective trial counsel would have presented objective documentary evidence. However, Skipper did not involve an ineffective-assistance claim. Rather, it involved the question of whether a trial court erred in excluding during the sentencing phase of trial the mitigating testimony of two disinterested witnesses, i.e., witnesses unrelated to and not involved with the defendant. The testimony would have shown that the defendant had the ability to adjust positively to incarceration. The United States Supreme Court reiterated that a sentencer, in considering the death penalty, cannot be precluded from considering, and cannot refuse to consider, any aspect of a defendant's character as a mitigating factor. To be sure, in Skipper, the State did argue that the trial court's exclusion of the mitigating evidence was harmless error in that the excluded testimony was merely cumulative of other testimony elicited from the defendant and his family members, an argument the Supreme Court rejected:
"[C]haracterizing the excluded evidence as cumulative and its exclusion as harmless is implausible on the facts before us. The evidence petitioner was allowed to present on the issue of his conduct in jail was the sort of evidence that a jury naturally would tend to discount as self-serving. The testimony of more disinterested witnessesand, in particular, of jailers who would have had no particular reason to be favorably predisposed toward one of their chargeswould quite naturally be given much greater weight by the jury. Nor can we confidently conclude that credible evidence that petitioner was a good prisoner would have had no effect upon the jury's deliberations. The prosecutor himself, in closing argument, made much of the dangers petitioner would pose if sentenced to prison, and went so far as to assert that petitioner could be expected to rape other inmates. Under these circumstances, it appears reasonably likely that the exclusion of evidence bearing upon petitioner's behavior in jail (and hence, upon his likely future behavior in prison) may have affected the jury's decision to impose the death sentence. Thus, under any standard, the exclusion of the evidence was sufficiently prejudicial to constitute reversible error."
476 U.S. at 8, 106 S.Ct. 1669. Whether the harmless-error standard applied by the Supreme Court in Skipper is analogous to the second prong of the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard for judging ineffective assistance of counsel, i.e., whether counsel's alleged ineffectiveness prejudiced the defendant, the Skipper case offers no guidance as to the first prong of the Strickland standardwhether counsel's decision to rely on expert testimony based on interviews with Perkins and his family members rather than on objective documentary evidence "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Accordingly, Skipper is not helpful.[5]
*251 We decline to extend the cases Perkins cites to hold that Perkins's trial counsel were ineffective for failing to present the documentary evidence in question. Accordingly, Perkins has failed to show good cause for the discovery he seeks, and he has not met his burden for the issuance of a writ of mandamus.[6]
PETITION DENIED.
NABERS, C.J., and SEE, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
STUART, J., concurs in the result.
NOTES
[1] Perkins also asserted a juror-misconduct claim in his Rule 32 petition. The circuit court granted Perkins a hearing on that claim also. Perkins's juror-misconduct claim, however, is not an issue in this appeal.
[2] Perkins concedes that he is not entitled to inspect records of the Board other than those that indicate the Board members' reasons for granting him parole on his earlier convictions.
[3] We note that Perkins fails to attach his Rule 32 petition to his petition for a writ of mandamus. The standard for determining whether discovery should be allowed in a Rule 32 proceeding is whether a Rule 32 petitioner has made allegations that, if proven, would entitle him to relief. Ex parte Land, 775 So.2d at 852. Of course, in considering a petition for the writ of mandamus, we have before us only so much of the record as is made a part of the petition and the answer. While better practice would call for attaching a copy of the Rule 32 petition to the mandamus petition, the State does not here argue that the descriptions of the matters alleged in the Rule 32 petition as set forth in Perkins's discovery motion are either inaccurate or misleadingly incomplete.
[4] Perkins also cites Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Woodson simply held unconstitutional a statute providing for a mandatory death sentence for first-degree murder and held that death-penalty statutes must allow for a "particularized consideration of relevant aspects of the character and record of each convicted defendant before the imposition upon him of a sentence of death."
[5] Under §§ 13A-5-45 and 13A-5-46, Ala. Code 1975, the trial court has the ultimate authority to determine whether a convicted defendant will receive the death penalty. The jury's recommendation is just thata recommendation. It is not binding on the trial court. One might argue that, because the trial court in the instant case found the existence of the mitigating factors Perkins now seeks to show postconviction, it is irrelevant that those factors were presented through expert testimony based on interviews of Perkins and his family. In other words, the trial court obviously was not swayed by the lack of objective documentary evidence. However, in Ex parte Smith, [Ms. 1010267, March 14, 2003], ___ So.2d ___, ___ (Ala.2003), we said:

"We will not undermine the responsibilities and duties of the jury during the penalty phase. § 13A-5-46, Ala.Code 1975. Although the trial court is not bound by the jury's sentencing recommendation, it is a factor in the trial court's determination. . . .
"Additionally, we note that while the trial court found [the defendant's] evidence significant in its determination of mitigating circumstances and considered those mitigating circumstances in the weighing process, this fact alone does not render the error harmless; in fact, it indicates that the jury's advisory verdict, if the evidence had been developed and the jury allowed to consider it, may have been different."
Ultimately, Smith is not helpful to Perkins in that, like Skipper, it involved whether the harmless-error rule excused a trial court's exclusion during the sentencing phase of the trial of evidence that would have shown the defendant's dysfunctional family background; it did not involve a claim of ineffective assistance. Further, Smith is also distinguishable to the extent that the opinion holds that the mitigating evidence the trial court excluded was not cumulative of evidence that was presented during the sentencing phase.
[6] Our holding in the instant case that the documents Perkins seeks contain evidence that is merely cumulative of that presented during the sentencing phase calls into question whether the Court of Criminal Appeals in Perkins I should have granted Perkins access to some of the other documents he requested in the trial court and to which his mandamus petition in that court was also directed, which documents would also contain additional evidence of his dysfunctional childhood. However, the validity of Perkins I is not before us.