SEE, Justice.
 

 Darryl Dewayne Turner (“Turner”) petitions this Court for the writ of mandamus directing the Court of Criminal Appeals to vacate its June 29, 2007, order in which it instructed Judge James W. Woodroof, Jr., to set aside his order granting discovery of certain institutional files and prosecution records. We conclude that Turner has not demonstrated a clear legal right to the relief sought; therefore, we deny the petition.
 

 Facts and Procedural History
 

 In 1999 Turner was convicted under §§ 13A-5-40(a)(2) and (a)(3), AIa.Code 1975,
 
 [1]
 
 of the capital murder of Barbara
 
 *809
 
 Wilson and was sentenced to death. In October 2006, Turner petitioned the Limestone Circuit Court for postconviction relief under Rule 32, Ala. R.Crim. P., alleging ineffective assistance of counsel at both the guilt phase and the penalty phase of his capital-murder trial.
 

 Turner moved the trial court for discovery of institutional files and prosecution records that he alleges are “necessary to a fair Rule 32 evidentiary hearing.” Petition at Exhibit C, p. 1, and Exhibit D, p. 1. After a hearing on the discovery requests, the trial court granted Turner’s motions as to (1) records related to the employment, training, discipline, and promotions or demotions of Detective Heath Emerson and Officer Lee Kennemer, who testified at his capital-murder trial; (2) records maintained by the Limestone County jail, where Turner was incarcerated pending his capital-murder trial; (3) records maintained by the Alabama Department of Human Resources related to Turner; and (4) records maintained by the Alabama Department of Human Resources related to Turner’s mother, father, grandmother, and anyone else who had claimed Turner as a dependant. Petition at Exhibit G, pp. 1-2. The trial court also ordered the State “to produce the entire Prosecution file kept and maintained in connection with the investigation and trial of Darryl Turner.” Petition at Exhibit G, p. 2. The trial court denied Turner’s motion as to the records of the Alabama Department of Forensic Sciences, as well as the institutional records related to the administration of death by lethal injection. Petition at Exhibit G, p. 2.
 

 Following the issuance of the discovery order, the State petitioned the Court of Criminal Appeals for the writ of mandamus directing the trial court to vacate its discovery order, except insofar as it related to the files of the Department of Human Resources on Turner himself. The Court of Criminal Appeals, concluding that Turner had failed to meet his burden to show good cause for the requested discovery, granted the State’s petition and issued the writ.
 
 State v. Turner,
 
 976 So.2d 508 (Ala.Crim.App.2007) (hereinafter “
 
 Turner”).
 
 Turner now petitions this Court for the writ of mandamus directing the Court of Criminal Appeals to vacate its writ.
 

 Issues
 

 Turner presents three grounds on which, he argues, he is entitled to the writ of mandamus from this Court. First, Turner argues that the Court of Criminal Appeals erred in issuing its writ of mandamus because, he says, the State had adequate remedies other than petitioning for the writ of mandamus. Second, he argues that in reviewing the State’s petition for mandamus relief, the Court of Criminal Appeals addressed the merits of his claim, instead of limiting its analysis to whether the claims are facially meritorious. Third, Turner argues that the Court of Criminal Appeals erred in concluding that he had not demonstrated good cause for the requested discovery.
 

 Standard of Review
 

 “ ‘A writ of mandamus is an extraordinary remedy, and it “will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ”
 

 Ex parte Monsanto Co.,
 
 862 So.2d 595, 604 (Ala.2003) (quoting
 
 Ex parte Butts,
 
 775
 
 *810
 
 So.2d 173, 176 (Ala.2000), quoting in turn
 
 Ex parte United Serv. Stations, Inc.,
 
 628 So.2d 501, 503 (Ala.1993)).
 

 Rule 21(e)(1), Ala. R.App. P., provides:
 

 “A decision of a court of appeals on an original petition for writ of mandamus ... may be reviewed de novo in the supreme court .... If an original petition has been granted by the court of appeals, review may be had by filing in the supreme court a petition for writ of mandamus or prohibition or other extraordinary writ directed to the court of appeals, together with a copy of the proceedings in the court of appeals, including the order granting the writ.”
 

 Turner is seeking review of the writ of mandamus issued by the Court of Criminal Appeals directing the trial court to vacate its discovery order, and he has otherwise complied with the requirements of Rule 21(e). Therefore, mandamus is an appropriate remedy, and we review de novo the merits of Turner’s petition.
 

 Analysis
 

 I.
 

 Turner first argues that the State is not entitled to mandamus relief because it had other adequate remedies. Specifically, Turner argues that the State could have moved the trial court for reconsideration of the discovery order and could have raised its concerns on appeal. The State argues in response that “both this Court and the Court of Criminal Appeals have repeatedly held that mandamus is the proper mechanism to contest discovery orders in Rule 32 proceedings and criminal cases.” State’s brief at 10. We agree with the State.
 

 In
 
 Ex parte Land,
 
 775 So.2d 847 (Ala.2000), the petitioner, Land, sought post-conviction relief from the trial court under Rule 32, Ala. R.Crim. P., alleging ineffective assistance of counsel and moved the trial court to allow discovery of various prosecution files and institutional records. The trial court granted the motion as to some of Land’s discovery requests but denied it as to others. Land petitioned the Court of Criminal Appeals for mandamus relief related to the discovery requests the trial court had denied. The Court of Criminal Appeals denied that petition, and Land sought the writ of mandamus from this Court under Rule 21(e), Ala. R.App. P. In addressing Land’s petition, we set forth the elements required for mandamus relief and stated:
 

 “This Court has held that a petition for the writ of mandamus is the proper means for seeking appellate review of a trial court’s discovery order. As noted above, Land has complied with Rule 21, Ala. R.App. P., and the State has refused to produce the materials he sought. Therefore, the only issues to be resolved are (1) whether the State has an imperative duty to give Land access to the materials requested and (2) whether Land has shown a clear legal right to the discovery order he seeks.”
 

 775 So.2d at 850 (citations omitted).
 
 See also State v. Isbell,
 
 985 So.2d 446, 450 (Ala.2007) (“ ‘This Court has held that a petition for the writ of mandamus is the proper means for seeking appellate review of a trial court’s discovery order.” ’ (quoting
 
 Ex parte Land,
 
 775 So.2d at 850)). We then addressed the merits of Land’s petition, ultimately concluding that Land had demonstrated a clear legal right to mandamus relief.
 

 In
 
 Ex parte Perkins,
 
 941 So.2d 242 (Ala.2006), we reaffirmed our holding in
 
 Ex parte Land
 
 that “ ‘[a] petition for a writ of mandamus is the appropriate vehicle for challenging a trial court’s ruling on a discovery motion.” ’ 941 So.2d at 245 (quoting
 
 Ex parte Steiner,
 
 730 So.2d 599, 600 (Ala.1998)). Perkins, like Land, sought mandamus review of a discovery order re
 
 *811
 
 lated to a Rule 32, Ala. R.Crim. P., petition for postconviction relief in which he alleged, among other things, ineffective assistance of counsel. Perkins had moved the trial court to allow discovery of certain records “in the possession of the Alabama Board of Pardons and Paroles ... [and] various Alabama law-enforcement agencies.” 941 So.2d at 244. The trial court denied Perkins’s motion, and the Court of Criminal Appeals denied his petition for the writ of mandamus. Perkins then petitioned this Court for the writ of mandamus directing the trial court to grant the discovery motions. Under the standard recited above, we addressed the merits of Perkins’s petition, ultimately denying the petition on the ground that Perkins had not demonstrated a clear legal right to the requested discovery.
 

 In this case, Turner, like Perkins and Land, moved the trial court for discovery related to an ineffective-assistance-of-counsel claim raised in his Rule 32, Ala. R.Crim. P., petition for postconviction relief. The trial court granted Turner’s motions for discovery, and the State petitioned the Court of Criminal Appeals for the writ of mandamus directing the trial court to vacate that order. Under our decisions in
 
 Ex parte Perkins
 
 and
 
 Ex parte Land,
 
 mandamus was the proper avenue for appellate review of those orders. Therefore, we agree with the Court of Criminal Appeals that “this case [was] correctly before [that] Court by way of this extraordinary petition.”
 
 Turner,
 
 976 So.2d at 510.
 

 II.
 

 Turner argues that the Court of Criminal Appeals, in issuing the writ of mandamus, “improperly rewrote the post-conviction discovery standard set forth by this Court in
 
 [Ex parte] Land
 
 ... by evaluating the substantive merits of Mr. Turner’s underlying claims.” Petition at 11. In
 
 Ex parte Land,
 
 we stated:
 

 “[W]e must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land’s basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause.”
 

 775 So.2d at 853. Turner argues that instead of limiting itself to determining whether his claims were meritorious on their face, the Court of Criminal Appeals examined and, in some cases, adjudicated his claims based on the underlying merits.
 

 The State contends that although this argument may be an appropriate argument for certiorari review,
 
 [2]
 
 it is not a ground on which the Court can award mandamus relief. We agree. Rule 21(e), Ala. R.App. P., provides that “[a] decision of a court of appeals on an original petition for [the] writ of mandamus ... may be reviewed de novo in the supreme court.” The State argued before the Court of Criminal Appeals that it had a clear legal right to the writ of mandamus because, it argued, Turner had failed to demonstrate good cause for the requested discovery. The Court of Criminal Appeals agreed with the State and issued the writ. Under
 
 *812
 
 Rule 21(e), Ala. R.App. P., we review the court of appeals’ decision de novo; therefore, we make an independent determination whether Turner’s claims are facially meritorious and whether he has demonstrated good cause for the discovery.
 
 See Ex parte Land, supra.
 
 What standard the Court of Criminal Appeals applied in making its decision is irrelevant to that determination. Thus, we agree with the State that Turner’s argument that the Court of Criminal Appeals applied the wrong standard in evaluating the State’s petition for the writ of mandamus is not a ground on which we would grant mandamus relief, and we deny his petition on this ground.
 

 III.
 

 Turner finally argues that he is entitled to mandamus relief because he did, in fact, demonstrate good cause for the requested discovery. In
 
 Ex parte Perkins
 
 we stated:
 

 “ ‘ “[G]ood cause” is the appropriate standard by which to judge postconviction discovery motions ....
 

 “ ‘... [I]n order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief.... Furthermore, a petitioner seeking post-conviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:
 

 “ ‘ “The [Rule 32] petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.” ’ ”
 

 941 So.2d at 245 (quoting
 
 Ex parte Land,
 
 775 So.2d at 852-53). The threshold issue in a good-cause inquiry is whether the Rule 32 petitioner has presented claims that are facially meritorious—that is, whether the petitioner has argued facts that, if proven, would entitle the petitioner to relief.
 
 See Ex parte Land,
 
 775 So.2d at 852 (“ ‘[A]n evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face,
 
 ie.,
 
 one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, would entitle the petitioner to relief.’ ” (quoting
 
 Ex parte Boatwright,
 
 471 So.2d 1257, 1258 (Ala.1985))). “Only after making that examination and determination can we determine whether [the petitioner] has shown good cause.”
 
 Ex parte Land,
 
 775 So.2d at 853.
 

 The basis of Turner’s Rule 32 petition was that his counsel rendered ineffective assistance during both the guilt phase and the penalty phase of his trial. “[T]o establish a claim of ineffective assistance of counsel, a petitioner must prove (1) that counsel did not provide reasonably effective assistance and (2) that counsel’s deficient performance prejudiced the petitioner.”
 
 Ex parte Land,
 
 775 So.2d at 850 (citing
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “[T]he standard for showing prejudice [is] stated in
 
 Strickland,
 
 in which the Supreme Court held: ‘[To show prejudice, the] defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.’ ”
 
 Ex parte Land,
 
 775 So.2d at 850 (quoting
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052).
 

 A. Records Related to Detective Emerson and Officer Kennemer
 

 Turner first argues that he has demonstrated good cause for the discovery
 
 *813
 
 of documents related to “the Employment, Training, Discipline, and Promotions or Demotions of Detective Heath Emerson and Officer Lee Kennemer.” Petition at 18. He argues that those records are necessary to prove his claim that trial counsel rendered ineffective assistance by failing to impeach Det. Emerson and to adequately cross-examine Det. Emerson and Officer Kennemer.
 

 Turner argued in his Rule 32 petition that his trial counsel failed to impeach Det. Emerson’s testimony regarding inconsistent accounts of the crime given by Ta-vares McCurley, the cousin of Turner’s codefendant, and Det. Emerson’s knowledge
 
 of
 
 other suspects in the ease. Turner argued that this failure cost “trial counsel ... an opportunity to challenge not only the testimony of this particular witness, but also the very conduct of the police department’s investigation.” Petition at Exhibit A, p. 57. Turner also argued that trial counsel had failed to cross-examine Det. Emerson and Officer Kennemer regarding their suspicions concerning the involvement of Trent Rainey in the crime and that “[i]f trial counsel had pursued this line of questioning, they could have exposed the Athens Police Department’s premature focus on Mr. Turner as the primary suspect” and cast “significant doubt ... on the extent to which Mr. Turner was culpable for the charged crimes.” Petition at Exhibit A, p. 59. Finally, Turner argued that trial counsel failed to cross-examine Det. Emerson and Officer Ken-nemer regarding the inconsistencies in statements concerning the crime made by McCurley and Christopher Harris, a code-fendant, and argued that trial counsel, therefore, “missed not only an opportunity to cast doubt on the shoddy police work that went into investigating the Wilson death, but also a chance to discredit the story implicating Mr. Turner as the primary suspect.” Petition at Exhibit A, p. 61.
 

 Although Turner does allege some harm from trial counsel’s allegedly deficient assistance, we cannot say that these allegations, if proven, would demonstrate that “ ‘there is a reasonable probability that, but for counsel’s unprofessional errors, the result would have been different.’ ”
 
 Ex parte Land, 775
 
 So.2d at 850 (quoting
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052). Therefore, we cannot say that Turner has demonstrated that he was prejudiced by the alleged failures. Turner alleges that trial counsel’s failure to impeach Det. Emerson cost him an opportunity to cast doubt on the police investigation into Wilson’s murder, but Turner does not allege that this was the only such opportunity or that there is a reasonable probability that but for the loss of this particular opportunity the outcome of his case would have been different.
 

 Similarly, Turner alleges that trial counsel’s failure to cross-examine Det. Emerson and Officer Kennemer on specific issues cost him an opportunity to cast doubt on his culpability and to discredit the story implicating him as the primary suspect, but he fails to present facts or to argue that this was the only such opportunity or that trial counsel’s failure at this juncture probably affected the outcome of the trial. Thus, we conclude that Turner has not demonstrated that, “ ‘but for counsel’s [allegedly] unprofessional errors, the result would have been different’ ” and, therefore, that he has not met his burden to allege facts that, if proved, would entitle him to relief.
 
 See Ex parte Land, supra.
 

 It further appears that even if we were to find Turner’s claims to be facially meritorious, he has not demonstrated good cause for the requested discovery. Turner argues that
 

 
 *814
 
 “discovery related to the prior behavior of Detective Emerson and Officer Ken-nemer is essential to proving Mr. Turner’s claims that trial counsel were ineffective for failing to impeach false testimony. Likewise, records related to training and protocols would have been highly material to challenging the illegal arrest or impeaching the testimony of crucial State witnesses.”
 

 Petition at 20-21. However, it is unclear how Det. Emerson’s training and employment history would have helped Turner establish his ineffective-assistanee-of-coun-sel claim that trial counsel failed to use the police record of Det. Emerson’s interview with McCurley concerning the crime to impeach Det. Emerson’s testimony. Similarly, it is unclear how the requested records would relate to Turner’s allegation that trial counsel was ineffective for failing to cross-examine Det. Emerson and Officer Kennemer as to their suspicions of other suspects or the inconsistent testimony of certain witnesses. Instead, Turner’s request appears to be the type of “fishing expedition” warned against in
 
 Ex -parte Land:
 
 “[W]e caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ ” 775 So.2d at 852 (quoting
 
 People v. Gonzalez,
 
 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990)). Therefore, even if we were to find facially meritorious Turner’s claim that trial counsel rendered ineffective assistance by failing to impeach Det. Emerson with certain documents and failing to cross-examine Det. Emerson and Officer Kennemer as to certain issues, we would conclude that Turner has not demonstrated good cause for the requested discovery.
 

 We deny Turner’s petition for the writ of mandamus as to this issue.
 

 B. Limestone County Jail Records
 

 Turner argues that he has demonstrated good cause for discovery of the Limestone County jail records. In order to determine whether Turner has demonstrated good cause for the discovery of the jail records, we must first examine whether this discovery relates to a facially meritorious claim.
 
 See Ex parte Land, supra.
 
 Turner argues in his mandamus petition before this Court that the requested records are related to his claim that “trial counsel were ineffective for failing to present certain mitigating evidence, specifically including evidence related to a lack of disciplinary infractions while Mr. Turner was incarcerated.” Petition at 23. In his Rule 32 petition, Turner generally alleged that he was “denied [effective] assistance [of counsel] by [counsel’s] failure to adequately present a large quantity of available mitigation evidence,” Petition at Exhibit A, p. 85, and that “[h]ad trial counsel conducted a reasonably adequate investigation, developed a reasonable mitigation strategy, and presented the wealth of available mitigating evidence, there is a reasonable probability that Mr. Turner would not have been sentenced to death.” Petition at Exhibit A, p. 106. With regard to his behavior while incarcerated, Turner specifically alleged that “[c]ounsel failed to present testimony from Sergeant James Pugh that Mr. Turner committed no disciplinary infractions while incarcerated ... pending trial.” Petition at Exhibit A, p. 105. As noted previously, in order to demonstrate good cause for the discovery sought, Turner must first establish that his claims are meritorious on their face.
 
 See Ex parte Land, supra.
 
 We hold that as to this claim Turner has met this burden.
 

 In
 
 Ex parte Land,
 
 the petitioner argued that his trial counsel was ineffective for, among other things, failing to present mitigating evidence at the penalty phase of
 
 *815
 
 trial, including “evidence that he adjusts well to incarceration.” 775 So.2d at 853. The State argued, among other things, that Land’s claims were not facially meritorious. We disagreed, stating:
 

 “Land’s claims, if proved to be true, would entitle him to relief. The United States Court of Appeals for the Eleventh Circuit has held that trial counsel’s failure to investigate the possibility of mitigating evidence is, per se, deficient performance.... Furthermore, trial counsel may be found ineffective for failing to present evidence of adjustment to
 
 incarceration_See Skipper v. South Carolina,
 
 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (holding that a capital defendant
 
 must
 
 be permitted at the penalty phase of his trial to introduce evidence of adjustment and good behavior while incarcerated).”
 

 775 So.2d at 853-54. Under our decision in
 
 Ex parte Land,
 
 and in light of Turner’s argument that if trial counsel had presented the mitigating evidence, including the evidence shown by the records of the Limestone County jail relating to his incarceration there, he would likely not have been sentenced to death, Turner’s claim that trial counsel failed to present mitigating evidence regarding his behavior while incarcerated is facially meritorious.
 

 We now address whether Turner has otherwise demonstrated good cause for discovery of the Limestone County jail records.
 
 See Ex parte Land,
 
 775 So.2d at 853 (“[W]e must examine Land’s basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause.”). The Court of Criminal Appeals concluded that “some of the information which Turner sought was, in part, cumulative to other evidence that had been presented” and that “ ‘[tjhis information was clearly available through other less intrusive means; therefore, [the petitioner] can show no good cause for disclosing information related to this claim.’ ”
 
 Turner,
 
 976 So.2d at 517 (quoting
 
 Jackson v. State,
 
 910 So.2d 797, 808 (Ala.Crim.App.2005)). Turner argues that he has demonstrated good cause for discovery of the Limestone County jail records because, he says, the information in those records (1) was not cumulative of other evidence admitted at trial, (2) was not available through other sources, and (3) was of greater evidentiary value than testimony.
 

 We agree with Turner that the requested records are not cumulative. Before concluding that the evidence would be cumulative “in part,” the Court of Criminal Appeals listed the following evidence:
 

 “The record shows that the sentencing hearing before the jury was waived after Turner became disruptive when the jury returned a verdict finding him guilty of capital murder. During the sentencing hearing before the circuit court the defendant told the court that he had become a Christian while he was incarcerated. The probation officer’s report also states that Turner is a born-again Christian. Turner’s mother and his grandfather testified that they were shocked by Turner’s involvement in the murder because, they said, such conduct was totally uncharacteristic for Turner.”
 

 Turner,
 
 976 So.2d at 508. Although this evidence may fall into the category of mitigating evidence, it does not appear that this evidence would speak to whether Turner had had disciplinary infractions while incarcerated. Therefore, we agree with Turner that the requested discovery is not cumulative of other evidence admitted at trial.
 
 Cf. Ex parte Perkins,
 
 941 So.2d at 249 (“Apparently, Perkins’s trial counsel
 
 did
 
 perform an investigation and
 
 did
 
 pres
 
 *816
 
 ent evidence sufficient to convince the trial court of the existence of mitigating factors substantially similar to that Perkins now seeks to prove in his postconviction petition. Therefore, we conclude that the documentary evidence in the form of law-enforcement records Perkins now seeks would simply be cumulative of the evidence his counsel presented during the sentence phase of his trial.”).
 

 Turner next argues that the information in the Limestone County jail records is not available by other means because “[i]t is not plausible to suggest that Mr. Turner or Sergeant Pugh could personally know all of the information contained in the Limestone County Jail’s intake, assessment, institutional, personal, disciplinary, medical, psychological, psychiatric, mental health, and any other records generated or maintained by the Limestone County Jail relating to Mr. Turner.” Petition at 24. However, Turner’s Rule 32 petition does not allege that trial counsel failed to present any or all of this information. Instead, the only claim in Turner’s Rule 32 petition related to the Limestone County jail records is that “[cjounsel failed to present testimony from Sergeant James Pugh that Mr. Turner committed no disciplinary infractions while incarcerated at the [Limestone] County Jail pending trial.” Petition at Exhibit A, p. 105. The information necessary to vindicate this claim is well within Sgt. James Pugh’s knowledge and would be available through his testimony.
 

 Although the Court of Criminal Appeals has held that a petitioner fails to show good cause for discovery when the information sought is available by less intrusive means,
 
 [3]
 
 we have not had occasion to address this particular statement. However, in adopting the good-cause standard in
 
 Ex parte Land,
 
 we recognized that discovery in postconviction proceedings is limited, stating:
 

 “We emphasize that this holding— that postconviction discovery motions are to be judged by a good-cause standard — does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4.... By adopting this standard, we are only recognizing that the trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ‘is not a device for investigating possible claims, but a means of vindicating actual claims.’ ”
 

 775 So.2d at 852 (quoting
 
 People v. Gonzalez,
 
 51 Cal.3d at 1260, 800 P.2d at 1206, 275 Cal.Rptr. at 776). In that ease, we cited other jurisdictions that had adopted a “similar ‘good cause’ or ‘good reason’ standard for the postconviction discovery process.” 775 So.2d at 852. The courts in those cases also emphasized the limited nature of discovery in postconviction proceedings.
 
 See, e.g., State v. Lewis,
 
 656 So.2d 1248, 1250 (Fla.1994) (“In most cases any grounds for post-conviction relief will
 
 *817
 
 appear on the face of the record. On a motion which sets forth good reason, however, the court may allow limited discovery into matters which are relevant and material, and where the discovery is permitted the court may place limitations on the sources and scope.”);
 
 People ex rel. Daley v. Fitzgerald,
 
 123 Ill.2d 175, 182-84, 526 N.E.2d 131, 134-35, 121 Ill.Dec. 937, 940-41 (1988) (“[T]he range of issues in a post-conviction proceeding is relatively narrow, and discovery requirements are correspondingly limited.... In deciding whether to permit the taking of a discovery deposition, the circuit judge should consider, among other relevant circumstances, the issues presented in the post-conviction petition, the scope of the discovery sought, the length of time between the conviction and the post-conviction proceeding, the burden that the deposition would impose on the opposing party and on the witness, and the availability of the desired evidence through other sources.”);
 
 State v. Marshall,
 
 148 N.J. 89, 270, 690 A.2d 1, 92 (1997) (“[Consistent with our prior discovery jurisprudence, any [postconviction-re-lief] discovery order should be appropriately narrow and limited.... ‘[Tjhere is no postconviction right to “fish” through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist.’ ” (quoting
 
 People v. Gonzalez,
 
 51 Cal.3d at 1259, 800 P.2d at 1205, 275 Cal.Rptr. at 775) (citation omitted)).
 

 The rule set forth by the Court of Criminal Appeals in
 
 Jackson v. State,
 
 910 So.2d 797 (Ala.Crim.App.2005) — that a petitioner cannot show good cause for discovery if the information sought is available through other less intrusive means — is consistent with and furthers our policy that discovery in the Rule 32 setting is limited to discovery for which the petitioner has demonstrated good cause.
 
 See Ex parte Land, supra.
 
 Turner argues:
 

 “As the trial court recognized at the discovery hearing: ‘[Sgt. James Pugh] is not going to probably remember eleven years ago what went on between him and an inmate, when he’s dealing with hundreds.... [T]he best evidence of any kind of disciplinary infraction is probably beyond the scope of James Pugh, probably beyond the scope of his current memory and it’s fair to get those records at the Limestone County jail.”
 

 Petition at 24-25. However, Turner has not argued or presented any evidence to indicate that Sgt. Pugh, in fact, does not remember him or that Sgt. Pugh cannot testify as to Turner’s lack of disciplinary infractions while incarcerated at the Limestone County jail. As the State noted at the disciplinary hearing, “[b]efore [Turner] can establish good cause [for the Limestone County jail records], [he would] have to show that [Sgt.] James Pugh doesn’t remember this inmate. The burden is on [him] to establish good cause.” Petition at Exhibit E, p. 27;
 
 see also Ex parte Land,
 
 775 So.2d at 852 (“[A] trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief.”). Therefore, we agree with the Court of Criminal Appeals and with the State that Turner has not demonstrated good cause for the Limestone County jail records, because he has not demonstrated that Sgt. Pugh’s testimony would be an insufficient alternative source for the information necessary to vindicate the claim related to those records.
 

 Turner argues that even if the records are available through other sources, he has nonetheless demonstrated good cause for the requested discovery because “State records carry greater evidentiary value than Sergeant Pugh’s memory given that State records do not have the credibility issues that go along with one individual’s
 
 *818
 
 memory from more than ten years ago.” Petition at 24. We rejected a similar argument in
 
 Ex parte Perkins,
 
 in which the petitioner argued that trial counsel had rendered ineffective assistance by relying on recollections of Perkins’s family members rather than presenting evidence of his dysfunctional upbringing through documents and records. We noted that the cases cited by Perkins in support of his position “did not draw a distinction between expert mitigating testimony based on interviews with the defendant and his family members, on the one hand, and objective documentary evidence, on the other.” 941 So.2d at 249. We “decline[d] to extend [those] cases ... to hold that Perkins’s trial counsel were ineffective for failing to present the documentary evidence in question” and held, instead, that “Perkins ha[d] failed to show good cause for the discovery he [sought], and he ha[d] not met his burden for the issuance of a writ of mandamus.” 941 So.2d at 251.
 

 Because Turner failed to demonstrate that the information that could be revealed by the discovery of the Limestone County jail records cannot be obtained from another less intrusive source, we conclude that he has not demonstrated good cause for that discovery and, thus, has failed to demonstrate a clear legal right to the writ of mandamus. We, therefore, deny his petition as to those records.
 

 C. Records of the Alabama Department of Human Resources
 

 Finally, Turner argues that he is entitled to the writ of mandamus because, he says, he has demonstrated good cause for discovery of the records kept by the Alabama Department of Human Resources related to several of his family members. Turner argues that this information was related to his claim that trial counsel were ineffective because they failed to investigate and present mitigating evidence, in general, and mitigating evidence related to his background, in particular.
 
 See
 
 petition at 27. AlS discussed in the previous section, Turner has presented a facially meritorious claim as to trial counsel’s failure to present mitigating evidence.
 
 See Ex parte Land, supra.
 
 We therefore look to whether he has demonstrated good cause for the requested discovery of the Alabama Department of Human Resources.
 

 Turner argued that trial counsel were ineffective for failing to investigate and present mitigating evidence concerning his background, including his family’s poverty. Turner moved the trial court for discovery of the records of the Alabama Department of Human Resources because “[a]t times during his childhood, Mr. Turner’s family depended upon food stamps or subsidies provided to them by the government. Evidence of the family’s reliance on government assistance is likely contained in the records maintained by the Alabama Department of Human Resources. This type of evidence is undoubtedly mitigating.” Petition at Exhibit C, pp. 7-8.
 

 The State argued, and the Court of Criminal Appeals agreed, that Turner does not need the records of the Department of Human Resources to prove this claim because the information is available through myriad other sources without a court order, including the testimony of family members, tax returns, subsidy applications, or documents presented to the family upon receipt of food stamps or other subsidies. State’s brief at 29;
 
 Turner,
 
 976 So.2d at 517-18. We agree, and, for the same reasons set forth in our discussion of Turner’s request for the Limestone County jail records, we conclude that Turner has not demonstrated good cause for the requested discovery.
 
 See Jackson, supra.
 
 We further conclude that Turner has failed to demonstrate a clear legal right to the
 
 *819
 
 relief sought; therefore, we deny Turner’s petition on this ground.
 

 Conclusion
 

 Because Turner has not demonstrated a clear legal right to the issuance of the writ of mandamus directing the Court of Criminal Appeals to vacate its order directing the trial court to set aside its discovery orders, we deny his petition.
 

 PETITION DENIED.
 

 LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 COBB, C.J., recuses herself.
 

 [1]
 

 . Section 13A-5-40(a), Ala.Code 1975, reads, in pertinent part:
 

 "(a) The following are capital offenses:
 

 [[Image here]]
 

 "(2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.
 

 "(3) Murder by the defendant during a rape in the first or second degree or an attempt thereof committed by the defen
 
 *809
 
 dant; or murder by defendant during sodomy in the first or second degree or an attempt thereof committed by the defendant.”
 

 [2]
 

 . Rule 39(a)(1)(D), Ala. R.App. P., provides that a petitioner can obtain certiorari review of decisions of the Court of Criminal Appeals that are "in conflict with prior decisions of ... the Supreme Court of Alabama." Turner appears to argue here that the standard applied by the Court of Criminal Appeals conflicts with the standard set forth by this Court in
 
 Ex parte Land,
 
 775 So.2d at 853.
 

 [3]
 

 .
 
 Ex parte Perkins,
 
 920 So.2d 599, 606 (Ala.Crim.App.2005) (denying Perkins's request for certain records related to his family’s poverty during his childhood because "[w]hen evidence is available through less intrusive means, a petitioner fails to establish good cause for requested discovery” (citing
 
 Jackson v. State,
 
 910 So.2d 797 (Ala.Crim.App.2005)));
 
 Jackson,
 
 910 So.2d at 808 ("Certainly, Jackson could inform his Rule 32 counsel of the identities of the individuals who visited him while he was incarcerated. This information was clearly available through other less intrusive means; therefore, Jackson can show no good cause for disclosing information related to the claim.”).